MENTER *v.* FIRST BAPTIST CHURCH OF EATON RAPIDS.

1. EASEMENTS— ADVERSE POSSESSION— PERMISSIVE USER— COLOR OF TITLE.

An infrequent user for occasional convenience of adjoining premises by one having ample means of access to his own premises is a permissive user.

2. SAME—NOTICE.

An easement by prescription depends on a user under such circumstances that the owner of the servient estate acquired actual notice of the adverse claim.

3. SAME—PRESCRIPTIVE RIGHT OF WAY—EVIDENCE.

The character of such use or occupancy under an adverse and hostile claim of right may be evidence of actual notice, but it must be so open, notorious and hostile as to leave no doubt in the mind of the owner that his rights are invaded.

4. SAME—PERMISSIVE USER.

A permissive user can never ripen into title by prescription.

5. SAME—EVIDENCE OF PERMISSION—ENCLOSURE.

Passing over uncultivated land which is not inclosed by fences is not inconsistent with the use which the owners make of the land.

6. SAME— CHURCHES AND CEMETERIES— GATES— FENCES— PUBLIC GROUNDS.

An adjoining proprietor cannot obtain title to a right of way over the grounds of a church, schoolhouse or other *quasi* public institution by occasionally passing through the gates over the inclosed lands to his own premises.

Appeal from Eaton; Smith, J. Submitted October 12, 1909. (Docket No. 57.) Decided December 10, 1909.

Bill by Melissa C. Menter against the First Baptist Church of Eaton Rapids to establish an easement by prescription. From a decree dismissing the bill, complainant appeals. Affirmed.

*Horace S. Maynard (John M. C. Smith,* of counsel), for complainant.

*Elmer N. Peters (Joseph B. Hendee,* of counsel), for defendant.

The object of the bill of complaint in this case is to establish an easement, a private right of way, over the land of the defendant to the adjoining land of the complainant. The case was heard upon pleadings and proofs taken in open court. The judge viewed the premises and dismissed the bill.

Complainant owns lot 4 of the village of Eaton Rapids, extending from Dexter Road upon the south to Division street upon the north. West of her lot is located the church property of the defendant. Her house fronts on Dexter Road. Between the west side of her house and the adjoining lot upon the west is a passageway 9 feet wide in front and 10 feet in the rear. There is also a narrow passageway between the west line of her house and the east line of defendant's land. Three outbuildings were located on the north of her lot, on Division street. The building on the northeast corner was a carriage house, with doors in front and rear sufficiently wide for teams to drive through to the central part of her lot. The next building to it was an icehouse. On the northwest corner of her lot was a barn. The width of the space between the icehouse and the barn is not stated in the record. Ten years before the case was heard, the carriage house and icehouse had been removed. There was a fence, composed partly of boards and partly of pickets, on the west side of complainant's lot. She claims that there was a gateway located about the middle of the fence when she purchased the land in 1883, and that she had obtained a prescriptive right of way over defendant's land through said gateway. The principal, if not the sole, use she made of this alleged right of way was in having wood, coal, and occasionally provisions drawn over defendant's land through this gateway to the rear of her house. She used about four tons of coal a year, and what wood was necessary to supply her household fires.

One Dr. Wilkins was her grantor, and had occupied the premises for a number of years. In none of the mesne conveyances, from the original owner to her, was any

reference made to such right of way. The defendant gave evidence tending to show: That originally the church property was inclosed by fences; that upon the north there was a row of horse sheds, extending from the barn on complainant's lot to the west along Division street; that upon the Dexter Road were two large gates for the passage of teams, one upon the east and the other upon the west sides of the church; that there was a row of hitching posts on the east side near complainant's lot line, extending from a point near the Dexter Road to the sheds upon the north, these posts being connected by rails with narrow spaces left at convenient distances for parties hitching to pass in front of their teams. One Brown built these sheds, which had eight stalls, and kept for his own use the one next to complainant's barn, which was on the boundary line. For his own convenience, he put doors in his stall at the end of the shed so that he might open them and drive through onto Division street, as it was at times difficult to back out of the shed. Mr. Brown used this shed from 1875 to 1882. Parties would sometimes open these doors and drive through. Seventeen or eighteen years before the hearing, these sheds were removed to the west side of the church, the hitching posts on the west side were taken away, and the ground graded and seeded up to complainant's lot line. Complainant testified that, after the shed was taken away:

" We drove anywheres, the same as the rest of them. The Baptists had their track that we followed."

She also testified:

" I don't think there is any mark of travel between my property and the church, or that there is any track noticeable on my property. I don't drive in often enough. I did not drive in enough to have a beaten road at all."

Complainant sought to show that her grantor, Dr. Wilkins, made use of this alleged right of way under a claim of right. The evidence very clearly establishes the fact that Dr. Wilkins drove in and out over his own land on the

east of his house, where there was a gate constructed for the passage of teams and vehicles, and through his carriage house or shed upon the north. His supplies of wood, coal, and provisions were drawn to the rear of the house through these two ways. There is also evidence that he protested to parties from whom he had bought wood against their driving over the church lot alongside his fence, and throwing the wood over the fence. The preponderance of evidence is against complainant in the use of this alleged way by Dr. Wilkins, and it is clear that she did not purchase her land with any view to an existing easement over defendant's land.

GRANT, J. (*after stating the facts*). The judge filed a written opinion holding that whatever use was made of defendant's land by Dr. Wilkins or complainant was a permissive one. He also found that "there is not the least proof that it was founded, or ever has been, on any claim of right to so use it." Passing over this land to complainant's lot was very infrequent, and was not by her, but by those from whom she occasionally bought merchandise for her own use. Such driving over the carriageway made and used by defendant did not tend to show an exclusive claim or right in her. The most that can be claimed is that defendant permitted complainant and others to drive through its property for their convenience. Complainant had ample means of access to her house over her own lands. One having ample means of access to his own premises, over his own land, cannot acquire a prescriptive right of way over adjoining lands without asserting his right thereto in some way more hostile and notorious than its occasional use for his own convenience. The law under which such an easement is obtained is not in doubt. It has been stated in a multitude of cases. The question which the courts have had to decide is whether the facts in the particular case are sufficient to establish the easement. We said in *Ann Arbor Fruit & Vinegar Co. v. Railroad Co.*, 136 Mich. 599, 608 (99 N. W. 869, 872, 66 L. R. A. 431):

"We concede that evidence of a notoriously hostile claim and hostile possession is admissible to prove, and that such evidence may in some cases justify the finding of, a prescriptive right. But this finding rests, in our judgment, upon the assumption that the owner of the servient tenement acquired actual notice of the adverse holding."

See, also, *Andries* v. *Railway Co.*, 105 Mich 557 (63 N. W. 526); *Dummer* v. *Gypsum Co.*, 153 Mich. 622 (117 N. W. 317); *Burnham* v. *McQuesten*, 48 N. H. 446; *Chicago, etc., R. Co.* v. *Johnson*, 205 Ill. 598 (68 N. E. 1112). Such actual notice may be determined by the character of the use and occupancy. Such use and occupancy, however, must be so open, notorious, and hostile as to leave no doubt in the mind of the owner of the land that his rights are invaded in a hostile manner. Permissive use can never ripen into title by prescription. 22 Am. & Eng. Enc. Law (2d Ed.), p. 1202.

The defendant's church buildings and grounds were occupied upon Sundays, and were generally unoccupied on week days. They were originally surrounded by fences with gates, and also with an entrance through the shed above mentioned. Whether these fences were retained, when the church was remodeled and the grounds graded and seeded, the record does not show. The church authorities had no notice, or reason to believe, that complainant claimed a prescriptive right of way over its property until shortly before this suit was commenced. Such passing over it was not an assertion of a hostile claim, or frequent enough to become notorious. The parties delivering goods to her entered at the same place the worshipers and attendants upon the church entered, and what little passing was done into her lot made no perceptible impression upon the ground. If there were no fences, complainant could not acquire a right of way, granting all the evidence given in her behalf to be true. *Kilburn* v. *Adams*, 7 Metc. (Mass.) 33 (39 Am. Dec. 754). Chief Justice Shaw said in that case:

"Such a use [passing over the land by an adjoining

proprietor] is not inconsistent with the only use which the proprietors think fit to make of it; and therefore, until they think proper to inclose it, such use is not adverse, and will not preclude them from inclosing it, when other views of the interests of the proprietors render it proper to do so."

If the proprietors of churches, schoolhouses, and other *quasi* public buildings inclose their grounds and provide unlocked gates for passage, an adjoining proprietor cannot obtain title to a right of way by occasionally passing through the gates and over the inclosed land to his own premises.   The same rule applies to grounds thus inclosed as applies to those uninclosed.

On many of the material facts in this case there was a sharp conflict of evidence.   The circuit judge saw the witnesses, and they were many.   He viewed the premises, and, we think, arrived at the correct conclusion.

The decree is affirmed, with costs.

BLAIR, C. J., and MOORE, McALVAY, and BROOKE, JJ., concurred.