# STATE OF MICHIGAN

# COURT OF APPEALS

RITCHIE AFFELDT, MELODY AFFELDT,
BRIAN GREEN, KARENLYNN GREEN,
VONNIE THURSTON, PHYLLIS HOOYMAN,
ROGER VORAC, KANDIS VORAC, DALE
VANDERWALL, CINDY VANDERWALL, BOB
COOKE, HALL, L.L.C., f/k/a JASON HALL,
TOM PAGE, by BRENT and CHRISTINE
MACDONALD, as successors in interest, and
KAREN KAY PAGE, by BRENT and
CHRISTINE MACDONALD, as successors in
interest,

UNPUBLISHED
January 29, 2015

        Plaintiffs/Counter-Defendants-
        Appellees/Cross-Appellants,

and

BRENT MACDONALD, CHRISTINE
MACDONALD, CHRISTOPHER BEKIUS,
THERESA BEKIUS, STEVEN DORNBUSH,
SCOTT MEE, NATALIA MEE, and AUSTIN
PATRICK RUSSELL,

        Plaintiffs/Counter-
        Defendants/Cross-Appellants,

and

RANDY BOUWKAMP, SORIN CIOBANU,
MIHAELA CIOBANU, ARNOLD COOK, RUTH
COOK, HEIDI RANDALL, MAX DOOLITTLE,
ELAINE DOOLITTLE, HEATHER DORNBUSH,
FARRIS RICHARD, LARRY FORTNEY, ANITA
GILLEO, SCOTT HILL, STEVEN
HOOGERWERF, JOELLEN HOOGERWERF,
DEREK HOWES, PAULA HOWES, TORU
INAGAKI, CHIE INAGAKI, ARNOLDO
JIMENEZ, GRETCHEN KOEMAN, KEVIN
KOEMAN, JASON KOUW, NICOLE KOUW,
STEVEN MAINVILLE, JANET MAINVILLE,

-1-

BRIAN MARCH, SHANNON MARCH,
MATTHEW MCCREA, SHELLEY MCCREA,
CURT NELSON, JENNIFER NELSON,
DOUGLAS NEUMAN, JOAN NEUMAN,
CLIFFORD ROSIN, BARBARA ROSIN,
FRANCIS RUTKOWSKI, MADELINE
RUTKOWSKI, T.J. THADDEUS
RYNSBURGER, MISKA RYNSBURGER, LISA
SACHS, PAUL SACHS, CRAIG SAYLOR,
SHELLEY SAYLOR, DARLE WASSINK,
COLLEEN WASSINK, WEST OTTAWA
PUBLIC SCHOOLS, and NOHEMI JIMENEZ,

   Plaintiffs/Counter-Defendants,

v

LAKE COURT BEACH ASSOCIATION, a/k/a
LAKE COURT ASSOCIATION, INC., MYRNA
FEYEN, CHESTER FEYEN, DARLENE R.
QUALLS, WILLIAM F. QUALLS III, LOIS A.
WILLIAMS, MERLE WAYNE VANDERSLUIS,
KAREN VANDERSLUIS, SEAN ANDREW
CARL, SHELLY LAURAN CARL, ROBERT E.
LANGE, ADA A. LANGE, HAROLD E.
NELSON, MARLENE VITASINSKI, MEB
DENEFF, RICK DENEFF, MARY BUYS, ART
BUYS, MARILEE VROON, PAUL VROON,
PEG ZIMMER, CAROLE O'CONNOR,
DOROTHY COUTURIER, SUE
VANDERMOLEN, ANNE WYNGARDEN,
MILT WYNGARDEN, GEORGE
VANDERWOUDE, DEB VANDERWOUDE,
SUE TENHOEVE, TOM TENHOEVE, DREW
MILES, DR. ROBERT MARTINY, and PAMELA
MAE SIMPKINS,

   Defendants/Counter-Plaintiffs-
   Appellants/Cross-Appellees,
and

SYLVIA ARMENOUHI AVSHARIAN and
PHYLLIS JEAN WOLBERT,

   Defendants.

No. 315277
Ottawa Circuit Court
LC No. 05-054011-CZ

-2-

Before:  BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendants own property in Lake Court Subdivision, an area bordered by Lake Michigan on the west and Lakeshore Drive on the east.  The various plaintiffs own property in Hollywood Subdivision, bordered on the west by Lakeshore Drive and, therefore, located directly across Lakeshore Drive from Lake Court Subdivision.

Plaintiffs initiated the instant litigation, asserting the right to an easement permitting pedestrian access over a drive ("Lake Court Drive"), a walkway, and stairs, as well as recreational use of a Lake Michigan beach ("the Beach"), all of which are located in Lake Court Subdivision, where the individual defendants reside.  The easement claim was originally brought under the theory that plaintiffs had an easement granted by deed.  The trial court granted summary disposition in favor of defendants on these claims, but allowed plaintiffs leave to file an amended complaint seeking an easement by prescription.  Several plaintiffs filed such an amended complaint and, after a bench trial, the trial court ruled that some, but not all, of these amending plaintiffs were entitled to a prescriptive easement.

All plaintiffs that are party to this appeal claim that the trial court erred by granting defendants summary disposition as to the claims of easement by deed and dismissing those claims.  Defendants appeal from the trial court's conclusion that plaintiffs Hooyman, Vorac, Vanderwall, Cook, Hall LLC and Page have a prescriptive easement.  Plaintiffs McDonald appeal from the trial court's conclusion that they do not have a prescriptive easement.

## I.  EASEMENT BY DEED

The claim of easement by deed arises out of land transactions beginning in 1924.  In June of that year, Ralph and Lola Hayden acquired the property now known as Lake Court Subdivision.  The following year, they conveyed portions of that property to John Galien and James Hoover and granting them a "right of passage over a private way."  In June 1925, the Haydens and John and Martha Koopman acquired the property now known as Hollywood Subdivision.  Soon thereafter, the Haydens conveyed via quit claim deed to all present and future owners of any part of the property the same "right of passage over a private way" that they had granted to Galien and Hoover.  In March 1926, the Koopmans conveyed their interest in certain lots in Hollywood Subdivision to the Haydens.

Plaintiffs claim that as subsequent purchasers of the land described in the Hayden quit claim deed, they are entitled to the "right of passage" set forth in that deed.   The trial court dismissed this claim on two grounds: the merger doctrine and the Marketable Record Title Act (MRTA), MCL 565.101 *et seq*.  We affirm these rulings.

## A. MERGER

Defendants argued below and the trial court held, that under the doctrine of merger, the right of passage described in the 1925 Hayden quit claim deed was extinguished as to several plaintiffs in 1926, when the Haydens became owners of both dominant and servient estates.[1] We conclude that the trial court's analysis of this issue was correct.[2]

The parties do not dispute that the easement granted by the Hayden quit claim deed was an easement appurtenant. Such an easement passes with the benefitted property when it is conveyed. *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). This is true even if the easement is not specifically mentioned in the deed. *von Meding v Strahl*, 319 Mich 598, 611; 30 NW2d 363 (1948). However, easements can be terminated. 1 Cameron, Michigan Real Property Law (3d ed), § 6.26, p 238. One cannot have an easement in one's own land. *Morgan v Meuth*, 60 Mich 238, 254; 27 NW 509 (1886). Thus, the union of the dominant and servient estates in the same owner extinguishes any prior easements. *von Meding*, 319 Mich at 605; *Dimoff v Laboroff*, 296 Mich 325, 328; 296 NW 275 (1941). This is "the universal rule." *von Meding*, 319 Mich at 605.[3]

As of 1926, the Haydens became the sole owners of certain property, now owned by some of plaintiffs and located in Hollywood Subdivision, benefitted by the easement granted by the 1925 Hayden quit claim deed, as well as the sole owners of the property burdened by the easement, now located in Lake Court Subdivision. Because one cannot own an easement in one's own land, the easement for the property owned by the Haydens in the Hollywood Subdivision was extinguished. *von Meding*, 319 Mich at 605; *Dimoff*, 296 Mich at 238. In addition, when the Haydens subsequently conveyed lots in the Hollywood Subdivision, thereby breaking union of title, they did not include any language in the deeds that granted the easement

---

[1] Defendants identified these as plaintiffs Green, Thurston, Hooyman, Vorac, Vanderwall, Mee, Russell, Ciobanu, Fortney, Gilleo, Hoogerwerf, March, Nelson, Rynsburger, Saylor, and Wassink.

[2] We review a trial court's decision on a motion for summary disposition de novo. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

[3] Plaintiffs' reliance on *Wettlaufer v Ames*, 133 Mich 201; 94 NW 950 (1903), for the proposition that the doctrine of merger is not allowed in equity is misplaced. Although the Supreme Court stated in *Wettlaufer* that merger will never be allowed in equity, it made the statement when determining whether a dower interest is extinguished when a widow obtains title to land. *Id.* at 205-206. Moreover, the Supreme Court held that an easement was extinguished when the dominant and servient estates were owned by the same person. *Id.* at 206-207.

anew. Accordingly, the trial court did not err in granting summary disposition to defendants regarding the merged property owned by the "merged plaintiffs."[4]

We reject the merged plaintiffs' reliance on *Haab v Moorman*, 332 Mich 126, 139; 50 NW2d 856 (1952), where the Supreme Court stated that an easement over an alley was never extinguished because there was never "a complete merger" of the dominant and servient estates. As the merged plaintiffs note, the Haydens never owned *all* of the lots now located in the Hollywood Subdivision. The merged plaintiffs assert that, due to this fact, there was never a "complete merger" of the dominant and servient estates and that, under *Haab*, the easement cannot be extinguished via merger. However, the operative issue in *Haab* was if the alley had remained a way of convenience, i.e., the issue was not whether the easement in the alley had been extinguished for individual lots. There is no indication in *Haab* that the Supreme Court ruled that the easement over the alley was extinguished for the dominant estates that were owned, at one time, by the owner of the servient estate, but not for the remaining lot. Thus, *Haab* does not render erroneous the trial court's application of the merger doctrine.

We also reject plaintiffs' argument that the Hayden quit claim deed be construed as a negative reciprocal easement. The doctrine of negative reciprocal easements has no application to the present case. There are no lots, which are from a common granter and are similarly situated, some of which have express restrictions in their deeds and others which do not. See *Sanborn v McLean*, 233 Mich 227, 229; 206 NW 496 (1925); *Civic Ass'n of Hammond Lake Estates v Hammond Lake Estates No 3 Lots 126-135*, 271 Mich App 130, 137; 721 NW2d 801 (2006).

Accordingly, the trial court did not err by ruling that the merger doctrine entitled defendants to summary disposition on the merged plaintiffs' claim of an easement under the Hayden quit claim deed.

## B. MARKETABLE RECORD TITLE ACT

The trial court also ruled that the MRTA extinguished the easement granted by the Hayden quit claim deed for all plaintiffs.

The Hayden quit claim deed creating the easement now asserted by plaintiffs was recorded in 1926. In 1929, the Legislature enacted the MRTA, which provides that "[a]ny person . . . who has an unbroken chain of title of record to any interest in land for . . . 40 years . . . shall at the end of the applicable period be considered to have a marketable record title to that interest." MCL 565.101. A person has an unbroken chain of title to an interest in land when the official public records disclose "[a] conveyance or other title transaction not less

---

[4] In addition, we find no merit to plaintiffs' argument that the Haydens, in addition to granting an easement to present and future owners of property in the subdivision in the quit claim deed, reserved to themselves an easement. Because one cannot have an easement in one's own land, *Morgan*, 60 Mich at 254, the Haydens could not have reserved for themselves an easement in the "private way."

than . . . 40 years . . ., which conveyance or other title transaction purports to create the interest in that person, with nothing appearing of record purporting to divest that person of the purported interest." MCL 565.102(a). A "conveyance" is any "instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged, or assigned; or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding 3 years, and executor contracts for the sale or purchase of lands." MCL 565.35. All claims that affect the interest and which arise out of any act, transaction, event, or omission that antedates the 40-year period are extinguished, unless a notice of claim has been filed. MCL 565.106.

In 1932, an assessor's plat of the Lake Court Subdivision, known as "Heneveld's Supervisor's Plat No. 6," was recorded. The plat shows Lake Court Drive as a private road and does not reference any easement rights over it or any other part of Lake Court Subdivision. Defendants argue that the Heneveld Plat conveyed a fee interest in the property at issue to the property owners in the Lake Court Subdivision and the MRTA would extinguish any other claims to that property unless a claimant filed a record notice asserting an easement or other competing interest within 40 years.[5]

The Heneveld Plat was a "conveyance." When a plat is recorded, the purchaser of platted lands receives not only the interest described in the deed, but also whatever rights are indicated in the plat. *Walker v Bennett*, 111 Mich App 40, 43; 315 NW2d 142 (1981).[6] Accordingly, because a purchaser of land in the Lake Court Subdivision would receive whatever rights are indicated in the plat, the Heneveld Plat is an instrument in writing by which title to any real estate may be affected. MCL 565.35. Even though it was a supervisor's plat, pursuant to the 1929 Plat Act, 1929 PA 172, it described the actual rights of the owners. And, by showing Lake Court Drive as a private road, it defined ownership of that road in those whose land abutted Lake Court Drive.

As the trial court noted, the question is not whether the Heneveld plat extinguished the easement described in the Hayden quit claim deed. Indeed, it could not do so. However, the plat was recorded subsequent to the Hayden quit claim deed and after the passage of the MRTA. As a result, because neither plaintiffs nor their predecessors in interest recorded a competing claim in the 40 years following the recording of the plat, the Heneveld plat "extinguish[es] all [other] claims that affect or may affect the interest" of the property at issue. MCL 556.106.

Accordingly, the trial court did not err by ruling that the MRTA operated to extinguish the easement granted by the Hayden quit claim deed.

---

[5] We reject the plaintiff's argument that there was not a record challenge to the 1926 deed and so it must be considered the "marketable title." The Heneveld Plat was recorded well within the 40 year period provided by the MRTA.

[6] *Walker* held that removal of one lot from a larger plat did not necessarily eliminate the rights to use of private road it had shared with the other lots in that plat. Contrary to plaintiff's suggestion, it did not hold that an assessor's plat could never serve to create or alter rights pursuant to the 1929 MRTA.

## II. PRESCRIPTIVE EASEMENTS

On appeal and cross-appeal, the parties take issue with the trial court's prescriptive easement rulings.[7] We affirm in part and reverse in part.

An easement is the right to use the property of another for a specific purpose. *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). "A prescriptive easement results from open, notorious, adverse, and continuous use of another's property for a period of 15 years." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). A plaintiff must prove by clear and cogent evidence his right to a prescriptive easement. *Id.*

For purposes of this issue, we divide plaintiffs into three sets. The first trace their period of prescriptive use through a common predecessor, Allen Kardux, who is not a party to this action. The second group each have independent periods of prescriptive use. The trial court found that the plaintiffs in both these groups were entitled to the claimed prescriptive easement. The third set consists of plaintiffs MacDonald who also asserts an independent period of prescriptive use. The trial court found that the MacDonalds were not entitled to the prescriptive easement.

### A. HOOYMAN, VORAC, VANDERWALL, COOK, HALL LLC & PAGE

Defendants argue that the trial court erred in granting the Hooyman, Vorac, VanderWall, Cook, Hall LLC, and Page plaintiffs a prescriptive easement. These plaintiffs were granted a prescriptive easement based on the use of Lake Court Drive and the Beach by Kardux from 1967 to 1985. Kardux's parents owned the lots in the Hollywood Subdivision that, at the time of trial, these plaintiffs owned. According to defendants, the trial court clearly erred in finding 15 years of continuous use by Kardux because Kardux's use, by his own testimony, was limited to a 10-year period, from when he was eight years old to when he was 18.[8] Kardux was born in 1967 and testified that his first memory of going to the Beach dated from when he was eight years old,

---

[7] In equitable actions, such as those for prescriptive easements, we review de novo a trial court's rulings and its factual findings for clear error. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007); *Wiggins v Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011) ("The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal.") "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 92; 662 NW2d 387 (2003).

[8] We decline defendants' request to take judicial notice of certain facts regarding the weather in 1978. Using these facts, defendants seek to discredit Kardux's testimony that he went to the Beach every day. However, the trial court, after hearing all the testimony, accepted Kardux's testimony regarding his use of the Beach. Because we give deference to the trial court's special opportunity to judge the credibility of the witnesses who appear before it, MCR 2.613(C), we will not interfere with the trial court's credibility determination regarding Kardux.

i.e., 1975. Although Kardux believed that he probably went to the Beach before 1975, there was no evidence regarding how often he used the Beach before then or when that use began. In addition, the testimony of Wayne Waterway does not support a finding that Kardux, or any member of his family, used the Beach before 1975. Waterway did not own any property in the Hollywood Subdivision or use the Beach until 1976.[9] Because there was no evidence regarding the specific use of Lake Court Drive and the Beach by Kardux before 1975, we are left with a definite and firm conviction that the trial court made a mistake in finding that 1967 marked the beginning of a period of continuous use by Allen. *Higgins Lake Prop Owners Ass'n*, 255 Mich App at 92. The only date that the evidence supported as beginning a period of continuous use of Lake Court Drive and the Beach by Kardux was 1975.

After trial, the court amended its factual findings to indicate that the use of Lake Court Drive and the Beach by Kardux and his family ended sometime after 1985. This amended finding was not clearly erroneous based on Kardux's testimony that, although he moved out of his parents' house when he was 18 years old, i.e., 1985, he visited his parents about once a week and, on most of those occasions, used the Beach. *Mulcahy*, 276 Mich App at 698. However, there was no testimony regarding how long Kardux visited his parents on a weekly basis. To conclude that he did so through 1990, which would be necessary to establish 15 years of continuous use beginning in 1975, would go beyond the record evidence. Accordingly, we are left with a definite and firm conviction that the trial court made a mistake when it found, by clear and cogent evidence, that Kardux used Lake Court Drive and the Beach for 15 continuous years. *Higgins Lake Prop Owners Ass'n*, 255 Mich App at 92. We therefore reverse the trial court's decision granting a prescriptive easement to the Hooyman, Vorac, the VanderWall, Cook, Hall LLC, and Page plaintiffs.

In reaching this conclusion, we find no merit to these plaintiffs' argument that the trial court erred when it refused to allow them to call Kardux's brother and sister, who plaintiffs claim would have testified about the family's use of Lake Court Drive and the Beach before 1975, as witnesses. Neither witness was listed in plaintiffs' witness lists, despite, as the trial court noted,

---

[9] We reject defendants' contention that MCR 2.402 does not permit communication equipment to be used to take trial testimony and, therefore, the trial court erred when it allowed Waterway to testify by telephone. A court rule is interpreted according to its plain language. *Valeo Switches & Detection Sys, Inc v EMCom, Inc*, 272 Mich App 309, 311; 725 NW2d 364 (2006). MCR 2.402(B) provides:

> A court may, on its own initiative or on the written request of a party, direct that communication equipment be used for a motion hearing, pretrial conference, scheduling conference, or status conference. . . . *The Court may, with the consent of all parties or for good cause, direct that the testimony of a witness be taken through communication equipment.* . . . [Emphasis added.]

Although MCR 2.402(B) permits motion hearings and conferences to be conducted by communication equipment, it also allows the testimony of a witness to be taken through communication equipment. See 2 Longhofer, Michigan Court Rules Practice, p 559.

the lengthy period of pretrial proceedings and multiple scheduling orders. Moreover, plaintiffs made no offer of proof in the trial court to suggest that these two witnesses would have actually testified to use of the property at issue before 1975. Accordingly, we find no error in the trial court's refusal to allow these witnesses to testify. See *Gillam v Lloyd*, 172 Mich App 563, 584; 432 NW2d 356 (1988).

We also find no merit to these plaintiffs' argument that the use of Lake Court Drive and the Beach by them and their predecessors for a 15-year period from 1994 to 2009 provides an alternate basis for affirming the trial court's grant of a prescriptive easement. At the hearing on plaintiffs' motion to file a second amended complaint to allege claims of a prescriptive easement, plaintiffs agreed that the cut-off date for any prescriptive period would be January 13, 2006. Accordingly, these plaintiffs are precluded from arguing that a prescriptive easement arose from 15 years of continuous use ending in 2009. See *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003); *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989).

## B. AFFELDT, GREEN & THURSTON

The Affeldt plaintiffs have owned their property in Hollywood Subdivision since 1998. Ritchie Affeldt testified that he uses the Beach about twice a week during the summer and perhaps monthly during the winter. The Affeldts' predecessors in title were Stanley and Shirley Beckman, who took title to the property in 1976. Stanley Beckman testified that he and his wife used the Beach beginning when they moved to Hollywood in 1976 and that his wife took their grandchildren, who were born in 1988 and 1990, to Beach often. Relying on this testimony, the trial court found that, "The evidence establishes that regular, seasonal use was made of Lake Court Drive and Lake Court Beach occurred over a period of twenty-two years by the time that Mr. and Mrs. Affeldt acquired title, and they have continued that use. . . . [T]his usage is sufficient to establish a prescriptive easement."

The Green plaintiffs obtained title to their Hollywood Subdivsion property in 2000. Karenlynn Green described her family's use of the Beach for recreational activities as weekly during the summer, less often in the fall, and every couple of weeks in the spring. The Greens' predecessor in title, Steven Ozaistowicz, acquired title to the property in 1986. He testified that he and his family used the Beach almost daily during the summer, less frequently during the spring and fall, and occasionally during the winter months. Relying on this testimony, the trial court tacked together the time of Ozaistowicz's and the Greens' usage to find 19 years of use sufficient to establish a prescriptive easement.

The Thurston plaintiffs purchased their Hollywood Subdivision property in 1984. Vonnie Thurston testified that she and her family have used the Beach since they moved in, frequently during the summer, less frequently in the spring and fall, and occasionally during the winter. She stated that since, in the time since her children reached adulthood, she has used the Beach less, perhaps once per month. Her son, Daniel Thurston, testified that he lived at his parents' home from 1984 to 2006 and that, as a child, he used the Beach two or three times per week during the summer. His brother confirmed this testimony. Relying on this evidence, the trial court found 21 years of use sufficient to establish a prescriptive easement.

The trial court relied exclusively on the testimony of the Affeldts, Greens, Thurstons, and their relevant predecessors in title to find that prescriptive easements had been established. Defendants argue that these plaintiffs failed to establish, by clear and cogent evidence, the "open, notorious, adverse, and continuous use of another's property for a period of 15 years." *Matthews*, 288 Mich App at 37.

At best, the testimony of these plaintiffs and their predecessors established that they used Lake Court Drive and the Beach frequently during the summers and significantly less frequently during the spring, fall, and winter.

It is of great import that the entitlement to a prescriptive easement must be proven by clear and cogent evidence, a heightened civil burden that this Court has described as follows:

> "[C]lear and cogent evidence" is more than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt. That is to say, the standard is much like "clear and convincing evidence." Thus, in an adverse possession case, for a party to establish possession by "clear and cogent evidence," the evidence must clearly establish the fact of possession and there must be little doubt left in the mind of the trier of fact as to the proper resolution of the issue. Thus, where there is any reasonable dispute, in light of the evidence, over the question of possession, the party has failed to meet his burden of proof. [*McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988) (citation omitted).]

Upon our review de novo, *Mulcahy*, 276 Mich App at 698, of the trial court's conclusions that the Affeldt, Green, and Thurston plaintiffs established prescriptive easements, we conclude that, "in light of the evidence," there are "reasonable dispute[s]" regarding the elements necessary to establish these prescriptive easements and, accordingly, reverse the trial court's rulings with respect to these three groups of plaintiffs. *McQueen*, 168 Mich App at 645 n 2.

Under the prescriptive easement doctrine, the 15-year time period does not being to run until the owner of the servient estate (in this case, defendants) has actual notice of the adverse use. *Menter v First Baptist Church of Eaton Rapids*, 159 Mich 21, 25; 123 NW 585 (1909). While actual notice "may be determined by the character of the use," the use must be "so open, notorious, and hostile as to leave no doubt in the mind of the owner of the land that his rights are invaded." *Id*. In this case, the trial court found that the use of these plaintiffs and their predecessors in interest, discussed immediately above, was sufficient to establish that defendants should have had actual notice of their adverse use. These plaintiffs and their predecessors testified to periodic use of the beach; however, defendants presented testimony from several Lake Court Subdivision residents that they never saw any of these plaintiffs or their predecessors using Lake Court Drive or the Beach. One witness did see Stanley Beckman at the Beach, but noted that he had asked permission, and permissive use is insufficient to establish a prescriptive easement. The court also relied on Lake Court Subdivision meeting minutes from 1988 to 1989 to establish that Lake Court Subdivision residents were aware that Hollywood Subdivision residents were utilizing Lake Court Drive and the Beach. However, as defendants note, the fact that Lake Court Subdivision residents were aware that some Hollywood Subdivision residents were utilizing Lake Court Drive and the Beach but elected not to pursue legal action at that time

-10-

supports their argument that whatever usage these unidentified Hollywood Subdivision residents engaged in did not rise to a level that was "so open, notorious, and hostile as to leave no doubt in the mind of the owner of the land that his rights are invaded." *Id*. Finally, there was no evidence that any of these plaintiffs or their predecessors made any improvements to or left indications on Lake Court Drive or the Beach that they had used the property. While it is true that "the nature and character of the right claimed[,]" *von Meding*, 319 Mich at 613, over Lake Court Drive and the Beach does not lend itself to improvement or permanent indication of adverse use, it is similarly true that there is no evidence to suggest that these plaintiffs did anything that would have provided actual notice of adverse use to defendants.

The trial court did not indicate that it disbelieved the testimony of numerous Lake Court Subdivision residents, all of whom testified that they could not recall seeing any of these plaintiffs or their predecessors adversely using the property at issue. We find that plaintiffs' and their predecessors' testimony to the contrary, combined with unspecific meeting minutes and a lack of any evidence that defendants should have been aware of the adverse use, did not rise to the level of clear and cogent evidence necessary to establish prescriptive easements with regard to these plaintiffs. Accordingly, we reverse the trial court's ruling that the Affeldt, Thurston, and Green plaintiffs established a prescriptive easement.

## C. MACDONALD

On cross-appeal, plaintiffs argue that the trial court erred when it found that Wayne Waterway, the MacDonald plaintiffs' predecessor, did not use Lake Court Drive and the Beach for 15 continuous years and that, therefore, the MacDonalds had not established a prescriptive easement. We agree that the trial court overlooked testimony from Waterway when it stated that there was no evidence that he used the Beach during the years 1978 to 1984 when he owned property in Hollywood Subdivision but did not live there. Waterway testified that when he did not live in the subdivision he would drive to his property there and do "lot clearing and stuff like that" and then use the Beach. However, it is unknown how often Waterway engaged in lot clearing and similar activities and if he engaged in those activities each year that he did not live in Hollywood Subdivision. Because it is unknown how often Waterway used the Beach from 1978 to 1984, we are not left with a definite and firm conviction that the trial court made a mistake when it found that the evidence did not establish 15 years of continuous use of Lake Court Drive and the Beach by Waterway. *Higgins Lake Prop Owners Ass'n*, 255 Mich App at 92. Accordingly, we affirm the trial court's ruling that the MacDonald plaintiffs did not establish a prescriptive easement.[10]

## III. CONCLUSION

We affirm the trial court's grant of summary disposition to defendants as to all the claims of easement by deed. We affirm the trial court's ruling that the MacDonald plaintiffs did not establish a prescriptive easement, but reverse its rulings that the Hooyman, Vorac, VanderWall,

---

[10] Because we find that no plaintiffs were entitled to a prescriptive easement, we need not address the parties' arguments concerning the scope of those prescriptive easements.

-11-

Cook, Hall LLC, Page, Affeldt, Thurston, and Green plaintiffs did established such a prescriptive easement.  Remanded for entry of judgment in favor of defendants.  We do not tax costs.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro