*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM P. FROLING REVOCABLE LIVING TRUST, by its Trustee, WILLIAM P. FROLING,

Plaintiff/Counter-Defendant-Appellee/Cross-Appellant,

v

PELICAN PROPERTY, LLC,

Defendant/Counter-Plaintiff-Appellant/Cross-Appellee.

UNPUBLISHED
October 8, 2019

No. 342185
Macomb Circuit Court
LC No. 13-003083-CZ

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Pelican Property, LLC, appeals as of right an October 10, 2017 opinion and order granting summary disposition to plaintiff on its action for declaratory and injunctive relief in the form of a prescriptive easement over the parking lot owned by defendant and adjacent to plaintiff's commercial property. Plaintiff cross-appealed from a January 12, 2018 opinion and order denying plaintiff's motion for sanctions and attorney fees.

On appeal, defendant contends that the trial court committed error requiring reversal when it found that plaintiff's affidavits were sufficient to show that defendant had notice of plaintiff's adverse use of the parking lot, and that defendant granted a prescriptive easement over the entirety of its lot without restriction. On appeal, plaintiff contends that the trial court erred by denying its motion for costs, sanctions, and attorney fees. We affirm on all issues.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is the second time this case has come before this Court. This case arises out of a parking dispute in the City of Warren. James Matti ("Matti") owns defendant Pelican Property, LLC, which in turn owns the bowling alley Universal Lanes. Next to the bowling alley is a commercial property owned by plaintiff, the Froling Revocable Living Trust ("FRL Trust"). Plaintiff leases this property to the restaurant Dino's Cozy Cabin ("DCC"), which is owned and

-1-

operated by Roza Gjonoviq ("Gjonoviq"). Shortly after Matti purchased the bowling alley in 2010, he erected "no parking" signs in the parking lot and hired tow trucks to remove the vehicles of restaurant patrons. Plaintiff initiated the instant lawsuit seeking declaratory and injunctive relief, claiming it had a prescriptive easement over the parking lot.

The trial court granted in part plaintiff's motion for summary disposition, recognizing a prescriptive easement over a portion of the parking lot, but denied plaintiff's motion for sanctions.[1]

In the initial appeal, we reversed the trial court's decision on summary disposition because there existed a genuine issue of material fact regarding whether patrons had utilized the parking lot at plaintiff's direction. *William P Froling Revocable Living Tr v Pelican Prop, LLC*, unpublished per curiam opinion of the Court of Appeals, issued March 1, 2016 (Docket No. 322019) (hereinafter "*Froling I*"). It could not be determined whether plaintiff's tenants' use inured to plaintiff's benefit, and whether such use was open and notorious enough to provide defendant with sufficient notice of adverse use. *Id.* The panel held that the issue of sanctions was moot and remanded the case to the trial court and plaintiff provided additional evidence before moving for summary disposition again under MCL 2.116(C)(10). *Id.*

On remand, plaintiff offered the additional evidence of William Froling, Roza Gjonoviq, and DCC customer affidavits. Froling affirmed that he had informed all of his tenants over the past 25 years that they, and their patrons and employees, had the right to park in the parking lot without any restrictions. Gjonoviq stated that her lease included an attachment referencing her right to utilize the parking lot for herself, her customers, and her staff. Furthermore, she instructed her staff and customers to park in the parking lot, as she had done while she was an employee of the former tenant since 1997. Her patrons used the lot for dining-in and carry-out services. She, and her employees, wore DCC uniforms, distinguishing them from the general public. Customers Barbara Perkins, Peggy Graf, and David Hubbard also averred that, as frequent patrons, they parked in the lot at the direction of the restaurant owners for more than 15 years, during which time, to the best of their knowledge, there had not been any extended period that the restaurant had been closed.

In response, defendant submitted an affidavit by Matti stating that he rarely saw DCC employees and patrons utilizing the parking lot when he purchased the bowling alley in 2010. The trial court found that Matti's affidavit lacked the specificity to create a genuine issue of material fact in light of the evidence submitted by plaintiff, because he did not explain what he meant by "rare." Although defendant disputed the veracity of the Froling and Gjonoviq's affidavits, it did not submit any factual evidence to refute or rebut the information contained therein.

In its initial determination of the scope of the easement, the trial court relied on evidence submitted by defendant showing that Gjonoviq allowed customers to park tractor-trailers in the

---

[1] Defendant appealed the trial court's decision regarding summary disposition, plaintiff cross-appealed the trial court's decision regarding sanctions, and the appeals were consolidated.

DCC lot for extended periods of time, thereby contributing to the parking shortage in DCC's own parking lot. On remand, plaintiff submitted Gjonoviq's deposition transcript in its entirety explaining that only one truck parked in the DCC lot in an area not used for customer parking, and photographs showing the truck parked past all of the customer parking spot locations. The trial court found that affidavits by Froling, Gjonoviq and customers Perkins, Graf, and Hubbard, all noted that individuals used the parking lot regardless of whether the DCC lot was full. Because defendant did not address this argument or provide authority supporting the proposition that a prescriptive easement is limited to the extent that the asserting party first exhaust the use of his own property, and because there was no evidence that the adverse use of the parking lot was limited to a defined area, the trial court ruled that the prescriptive easement encompasses the entirety of the parking lot. Thus, plaintiff's motion was granted.

Defendant moved for reconsideration and plaintiff moved for sanctions. The trial court denied both motions and this appeal followed.

## II. NOTICE

Defendant argues that the trial court erred in granting plaintiff's motion for summary disposition because the affidavits submitted by plaintiff in support of its motion were insufficient to prove the essential element of notice. We disagree.

A trial court's grant or denial of a motion for summary disposition is reviewed de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). A motion for summary disposition under MCR 2.116(C)(10) should be granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law[ ]" after a review of all "the pleadings, admissions, and other evidence submitted by the parties[,] [viewed] in the light most favorable to the nonmoving party." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582-583; 794 NW2d 76 (2010) (citations, footnotes, and quotation marks omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*. (citation, footnote, and quotation marks omitted).

A trial court's holdings in equitable actions, such as an action for a prescriptive easement, are also reviewed de novo. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). The party claiming a prescriptive easement has the burden of establishing entitlement to the prescriptive easement by clear and cogent evidence. *Matthews v Dep't of Nat'l Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). The burden is not met where there is any reasonable doubt regarding the elements of the claim. See *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988). "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich app 676, 679; 619 NW2d 725 (2000); see also MCL 600.5801(4) (period of limitations is generally 15 years for an action for the recovery or possession of lands). Open and notorious use is use that provides sufficient notice "as to leave no doubt in the mind of the owner of the land that his rights are invaded in a hostile manner." *Menter v First Baptist Church of Eaton Rapids*, 159 Mich 21, 25; 123 NW 585 (1909).

This case was remanded for factual development regarding DCC's use of the parking lot. Specifically, to consider first, whether plaintiff's tenants, their employees, and their patrons were instructed by plaintiff to park there, and second, whether they did so in such a manner as to provide actual notice to defendant.

Froling states that plaintiff, its tenants, and restaurant customers used the parking lot without permission for over 25 years prior to the initiation this lawsuit, and plaintiff performed maintenance on the lot including painting and striping. Additionally, the leases between plaintiff and its tenants included attachments that mentioned the parking lot, and Froling verbally informed the tenants that they, their employees, and their customers had the right to park in the parking lot. When Matti told Froling that he no longer wanted plaintiff to use the parking lot, "[h]e made it clear to [Froling] that he could easily distinguish and identify restaurant-related parking." Froling described the dine-in and carry out traffic, and DCC uniformed employees that created a steady stream of traffic between the parking lot to DCC. Froling further described how in July 2011, Matti requested money for parking lot repairs because of plaintiff's historic use of the parking lot damaged the asphalt. Matti "made it clear to [Froling] during this discussion that he had knowledge of the historic restaurant-related use of the bowling center's parking lot and the historic use is what affected the asphalt…." Froling agreed to pay for a portion of the repairs. No one else contributed to the payment for the repairs, painting, or striping the parking lot.[2]

In her affidavit, Gjonoviq describes her inquiry into her rights to use the parking lot at the time she purchased DCC and took over the lease from plaintiff. Gjonoviq was particularly concerned about using the parking lot because many of DCC's elderly patrons benefitted from the close proximity of the parking lot to DCC's entrance. The lease from plaintiff included a description of the bowling center's property and address, and stated that DCC had the right to use the parking lot. Gjonoviq, DCC employees, and patrons used the parking lot continuously since 1997. Moreover, she instructed DCC staff and patrons to use the parking lot since 1997. Gjonoviq also described the restaurant's dine-in and carry-out traffic and uniformed employee traffic to and from the parking lot. She further described how she and her employees maintain the parking lot by picking up litter and sweeping. She described how Matti approached her in 2010 and told her that he could differentiate restaurant-specific parking and complained about DCC's continuous use of the parking lot, which he believed had caused damage to the asphalt and requested that Gjonoviq contribute to the cost of repairs.

Perkins states in her affidavit that, as a long-time DCC patron, she was unaware of any shut downs or closures. She had parked in the parking lot for at least the last 15 years at the direction of DCC's owners. Graf's affidavit states that she has frequented DCC since 1990 and was not aware of any shut downs or closures. She regularly parked in the parking lot at the direction of DCC's owners. Likewise, Hubbard's affidavit states that he frequented DCC since

---

[2] This is considerably more detail than what was contained in Froling's previous affidavit, particularly in describing plaintiff's use of the parking lot, and Matti's knowledge of that use. Gjonoviq's affidavit also is much more detailed.

1995 and was not aware of any shut downs or closures. He too regularly parked in the parking lot at the direction of DCC's owners.

The detail of these affidavits is sufficient to show that DCC's usage was at plaintiff's direction, and therefore, plaintiff's tenants' usage inured to plaintiff's benefit. *Capps v Merrifield*, 227 Mich 194; 198 NW 918 (1924) (a tenant's user inures to the landlord if the landlord has conferred upon the tenant any authorization of such use). Likewise, the affidavits show that plaintiff's use was adverse because Matti had actual notice that DCC and its patrons were using defendant's parking lot. Even in light of the fact that the parking lot was open to the public, plaintiff and DCC utilized the parking lot in a manner that leaves no doubt that the property rights to the parking lot were being invaded because they maintained, painted, striped, swept, and cleaned the parking lot, which are activities beyond normal use of a parking lot by the general public. Additionally, Froling and Gjonoviq averred that Matti demonstrated in his conversations with them about asphalt repairs that knew about plaintiff's use of the parking lot.

In response to plaintiff's motion, defendant resubmitted to the trial court Matti's January 26, 2014 affidavit, which avers that "it has only been in the last year and one half to two years that the restaurant employees and patrons have been parking in the bowling alley parking lot along the property line between the businesses," and prior to that that restaurant patrons and employees rarely used the parking lot after he purchased it in 2010. Matti gives no explanation of what he means by "rare" and without some further explanation; one cannot know whether this relative term is inconsistent with plaintiff's proffered evidence. We find that this is insufficient to create a genuine issue of material fact.

Defendant argues that plaintiff's evidence is insufficient to meet the necessary element of notice because plaintiff cannot attest to what was in defendant's mind. This is unpersuasive. Plaintiff's evidence shows that Matti spoke with Froling and Gjonoviq and plaintiff's use of the parking lot. The other attendant circumstances of plaintiff's use, which sets it apart from that of the public at large, demonstrates that plaintiff used the parking lot in a manner "as to leave no doubt in the mind of the owner of the land that his rights are invaded in a hostile manner." *Menter*, 159 Mich at 25. Accordingly, summary disposition was appropriate.

## III. SCOPE OF THE EASEMENT

Defendant argues that plaintiff's description of the location and parameters of the prescriptive easement are too indefinite to sustain the scope of the easement over the entire parking lot, and that plaintiff's counsel waived this issue by stating that the specific use requested "wasn't over the whole thing to the property." We disagree.

Initially, the trial court limited the scope of the easement to "overflow" parking based on evidence presented that DCC's use of its own parking area as an overnight truck stop contributed to its parking shortage. This Court did not consider the issue in *Froling I*, because the issue was considered moot. On remand, the trial court considered Gjonoviq's entire deposition testimony regarding tractor-trailer parking indicating that there has only been one truck parked at DCC and that it parked in the area not used for customer parking. Plaintiff also submitted photographic evidence demonstrating that the truck parked past all the marked spaces near a grassy area. The trial court noted that the affidavits submitted by Froling, Gjonoviq, Perkins, Graf, and Hubbard

all indicate that they used the parking lot regardless of the availability of parking on plaintiff's property. Thus, the trial court properly recognized plaintiff's prescriptive easement was not limited to "overflow" parking, but that it encompasses the entire area for parking.

Defendant contends that plaintiff waived this issue by admitting that the easement sought was not over the entirety of the parking lot. The record shows that defendant's reading is not accurate. Plaintiff actually was referring to the entirety of defendant's property, not the parking lot itself. Accordingly, plaintiff did not waive this issue and the trial court did not commit error when it concluded that the scope of the easement included the entire portion of defendant's property that is available for parking.

## IV. SANCTIONS AND ATTORNEY FEES

Plaintiff argues that it should have been awarded sanctions and attorney fees because defendant presented a frivolous defense and should have known that information it relied on in support of its defense was false. We disagree.

An appellate court reviews a trial court's finding regarding whether an action or defense was frivolous for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). Whether a document has been signed in violation of MCR 2.114 is also reviewed for clear error. *Contel Sys Corp v Gores,* 183 Mich App 706, 711; 455 NW2d 398 (1990). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen*, 465 Mich at 661-662.

MCR 2.625(A)(2) states: "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." That provision, in turn, defines "frivolous" as meeting one of the following conditions:

(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591.]

Plaintiff is not entitled to sanctions and attorney fees because it has not shown that defendant asserted a frivolous defense or had a reasonable basis to believe the facts underlying its defense were not true. Defendant first presented its defense to the trial court in August 12, 2013. Defendant obtained deposition testimony on November 22, 2013, which stated that DCC was closed for a substantial period of time between April 2004 and November 2007, but the witness admitted that he was not a DCC regular customer and could not recall with any specificity how long DCC was allegedly closed. At that same time defendant received information from DTE Energy which showed that DCC was not vacant at any point during the prescriptive period. However, this is insufficient to show that the asserted defense was frivolous at the time it was made, which was three months before defendant obtained the DTE Energy

evidence and the deposition testimony. Nor does it show that the witness's deposition testimony regarding his own observations was false in light of the DTE Energy's records.

In his January 26, 2014 affidavit Matti attested that, at the time he bought the bowling center in 2010, "rarely would a restaurant patron or employee park in the bowling alley parking lot." He further averred that "it has only been in the last year and one half to two years that the restaurant employees and patrons have been parking in the bowling alley parking lot…." On June 16, 2011, defendant's former attorney wrote a letter on defendant's behalf complaining about DCC customers using the parking lot. This does not conflict with Matti's testimony regarding his characterization of the "rare" use the parking lot in 2010. Moreover, Matti's statement regarding the increased use of the parking lot "in the last year and one half to two years" describes an approximated time range of January 2012 to June 2012. The beginning of the described period is only six months prior to his defense counsel's letter. Additionally, the time range describes increased usage, not absolute usage. Therefore, plaintiff has not shown that Matti's affidavit was unreasonable.

## V. CONCLUSION

Because we affirm the trial court's orders, remand is not required and it is not necessary to consider defendant's argument that remand to a different judge is required.[3] Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron

---

[3] Defendant argues that if remand is again required, the case should be assigned to a different judge because the trial court on remand failed to consider the element of notice and thereby ignored the Court of Appeals' directive to do so. Defendant contends that this suggests that the trial court is reluctant to provide defendant the minimum requirements of a fair trial. However, the record shows that the trial court fully considered the arguments that defendant *properly* presented. Defendant merely dislikes the outcome and this is insufficient to show that remand to a different judge is warranted.