CAPPS v. MERRIFIELD.

1. Adverse Possession—Landlord and Tenant—When Possession of Tenant Inures to Landlord's Benefit.

If a tenant is in adverse possession of land because of his lease, his possession inures to the benefit of his landlord, but if his original entry was a trespass by him as an individual, his possession does not inure to the benefit of his landlord.

2. Same — Trial — Instructions—Requested Instruction Erroneously Refused Where Legal Question Difficult.

In ejectment, where the defense was adverse possession by a tenant, and there was sufficient evidence from which an inference might have been drawn that both of the defendants, landlord and tenant, believed that the right to occupy the land in dispute passed to the tenant under his lease, it was reversible error for the trial judge to refuse a requested instruction calling the jury's attention to the facts which they might consider in determining the question of fact to which the law applied, in view of the fact that the legal question was a little difficult

for the lay mind to comprehend, notwithstanding the general charge correctly stated the law.  CLARK, C. J., and WIEST, J., dissenting.

Error to Ingham; Collingwood (Charles B.), J. Submitted January 11, 1924.  (Docket No. 55.)  Decided June 2, 1924.  Rehearing denied October 6, 1924.

Ejectment by Louise Stryker Capps and others against Robert T. Merrifield and another.  Judgment for plaintiffs.  Defendants bring error.  Reversed.

*Frank L. Dodge* and *James A. Greene,* for appellants.

*A. M. Cummins,* for appellees.

CLARK, C. J. (*dissenting*).    Defendant Merrifield owns land fronting on Washington avenue, in the city of Lansing, and a store building occupying it, 22x110 feet.    Plaintiffs have the record title in the regular chain of title of a parcel of land 22x22 feet, lying back of and adjoining said defendant's property.    Plaintiffs also own adjoining property, 132 feet in length, fronting on Washington avenue, so these two parcels make an L-shaped piece, with defendant's land lying within the angle.    An alley crosses on the back end of both of plaintiffs' parcels.    Defendant Loftus is a tenant of Merrifield, occupying the store building. He, like tenants who preceded him, uses, and for 22 years has used, the parcel behind the Merrifield store for storing boxes, merchandise, etc.    He has made improvements upon it.    He has used it freely in connection with his store business.    The parcel was at all times assessed to plaintiffs, and taxes were paid by them.    Plaintiffs brought ejectment against both defendants.    Mr. Merrifield claims title by adverse possession, and that the possession of the parcel by his tenants, including Mr. Loftus, has inured to his

benefit as such claimant. This was the theory and claim of both defendants at the trial and in their requests to charge, and the claim is advanced here. Both sides requested a directed verdict. The case was submitted to a jury, who returned a verdict for plaintiffs, on which judgment was entered. Defendants bring error.

Mr. Merrifield did not acquire this land by adverse possession by himself or his predecessors in title, or any of them. If there is a disseizin at all, it is by the tenants, particularly Mr. Loftus. The land in question was not included in the lease to Mr. Loftus, or to any prior tenant. There is no evidence of any representation by the landlord to any tenant that such land was within the lease. There was no pointing out of boundaries to include the parcel. It is not shown that Mr. Merrifield knew that the tenants were occupying the land in question, nor that he assented to it, beyond the circumstance that such occupancy was persisted in by the tenants and occupants of his building, to some extent at least, for nearly 50 years, and that about 1919 defendants paid for paving the alley. The encroachments to sustain the claim of adverse possession were not the direct acts of the landlord, but of the tenant, or tenants. Assuming that this is a disseizin, does it inure as a matter of law to create a title for the landlord? We think it does not. The subject is one of some difficulty under the authorities. If the tenant possesses land as tenant, his possession inures to the benefit of the landlord. But if he occupies it, not under the lease, but as a trespasser upon the land of a stranger, the trespass is his, and the penalties and compensations, if any, of the trespass are his also. We think of no principle by which the landlord might be held liable for such unauthorized trespass of his tenant, and none by which he may claim benefit because of it.

In *Doe* v. *Leavens*, 3 U. C. Q. B. 411, it was held, quoting syllabus:

"Where the landlord places a tenant in possession of Lot No. 1, and the tenant knowingly encroaches on a part of Lot No. 2, to which the agreement as between himself and the landlord gives him no right whatever:

"*Held,* that the tenant's occupation does not enure to create for the landlord a title to Lot 2."  *  *  *

And from *Holmes* v. *Turner's Falls Co.*, 150 Mass. 535, 547 (23 N. E. 305, 6 L. R. A. 283):

"If one person disseises another of land, and while in possession leases the land to a tenant, who continues to occupy it under his lease, the adverse possession of the tenant may be tacked to that of the landlord, and the possession of the tenant may be said to be that of the landlord; but if the landlord never had possession of the land, nor claimed title to it, and did not include it in the lease, the possession of the tenant beyond the boundaries of the land contained in the lease is not the possession of the landlord, even although the tenant believes that he is occupying only the land demised. *Melvin* v. *Proprietors of Locks and Canals*, 5 Metc. (Mass.) 15 (38 Am. Dec. 384)."

We quote syllabus, *West* v. *Price's Heirs*, 2 J. J. Marsh. (Ky.) 381:

"If landlord authorize tenant to enter on certain tract of land, and he enter on other land, such entry does not invest landlord with possession of land, so entered on by tenant, without authority."

It is also said in *Bayne* v. *Brown*, 60 Or. 110 (118 Pac. 282):

"It is true that the possession of the tenant may be the possession of the landlord, but the tenant cannot, without the direction or even the knowledge or consent of the landlord, effect a disseisin in his favor or originate adverse possession."

See, also, *Mason* v. *Wolff*, 40 Cal. 246; *Bruyea* v. *Rose*, 19 Ont. 433; 2 C. J. p. 74, and cases there cited.

To the contrary is the text of 1 Washburn on Real Property (6th Ed.), § 746, and of 2 Underhill on Landlord and Tenant, § 575, citing interesting early English cases.

As plaintiffs were entitled to a directed verdict as against the defense made, claimed errors in the charge and in argument of counsel are unimportant.

Judgment should be affirmed.

WIEST, J. (*dissenting*).   At the argument I was impressed with the view that the possession of plaintiffs' land by defendant Merrifield's tenant inured to the benefit of the landlord.   I am still of the opinion that possession by a tenant holding land under lease or express permission from one assuming rights of a landlord thereover inures to the benefit of the landlord.   But possession of land contiguous to that let, assumed by a tenant, without call from his landlord, upon which he is a trespasser, and for which trespass the landlord could not be held liable, does not inure to the landlord's benefit; neither does the tenant acquire title for himself.

Such a case is the one at bar.

I am, therefore, for affirmance.

SHARPE, J.   The proofs clearly show such an occupancy on the part of defendant Loftus and the firm of Christopher & Loftus, his predecessors, as constitutes adverse possession.   Mr. Loftus makes no claim of title.   It is insisted on his behalf, as well as on behalf of the defendant Merrifield, that the possessory rights acquired by him as against the plaintiffs inure to the benefit of his landlord and establish title in him.

The test to be applied is: Was Loftus in possession because of his lease from Merrifield, or was his original entry a trespass by him as an individual?   The lease did not cover the land in dispute.   While there

is no direct evidence that Mrs. Merrifield, who executed it, believed that the land leased extended westward to the alley, or that Loftus so understood, we think there was sufficient evidence from which such an inference might fairly have been drawn by the jury.    Mr. Loftus testified:

"*Q.* You are one of the defendants in this case, are you not?
"*A.* I am.
"*Q.* And it is true, is it, that you are in the grocery business down here?
"*A.* Yes, sir.
"*Q.* On Washington avenue, and are you occupying the premises in question?
"*A.* Yes.
"*Q.* How long have you been in business in the premises where you are now located?
"*A.* Since 1900, 23 years.    *    *    *
"*Q.* Since going into this building in 1900, what kind of business have you conducted on the premises?
"*A.* Grocery business.
"*Q.* And have you occupied it continuously since you went there in 1900?
"*A.* I have.
"*Q.* Under a lease or leases from the Merrifields?
"*A.* Yes, sir.
"*Q.* I have reference to the land which is in question here, lying just back of the Merrifield store, 22 feet. During that time you have occupied these premises what if any use have you put this land in question to just immediately back of the store?
"*A.* I have used it for receiving freight, goods and delivering, and for storage and for piling empty boxes."

He then testified as to the nature of the occupation of the land in dispute, and that he had erected small buildings for the storage of kerosene and gasoline thereon.    He was then asked:

"*Q.* When were those houses constructed on this property?
"*A.* Well, when we went in business we had it con-

structed, when we were getting ready to go, that was in 1900.

"Q. Prior to the time you actually went into business and opened up your store?

"A. Yes."

It thus appears that before obtaining possession of the store building they constructed these buildings on the land in dispute. They were of a somewhat permanent nature, having concrete floors. A cement coal shute was also put in. We think it may fairly be inferred that these tenants then believed their lease covered the ground on which these improvements were put.

It also appears that the occupants of the adjoining property desired to project a fire escape, then being constructed, on the land in dispute. To do so, they sought and obtained permission from Loftus. It seems clear that such permission was granted by him on the assumption that he was occupying the land under his lease.

It also appears that the Capital National Bank, who owned the land adjoining on the south, had paved the alley in the rear of its land and desired the pavement continued to the north. Mr. Loftus testified:

"They had built there a new building extending along the alleyway there and they wanted to pave their part of it in front, and they wanted to know if we would pave our part of it and I told them we would and I took it up with Mr. Merrifield and he told me to go ahead. * * * I told them I would ask Mr. Merrifield and if he wanted to pay for it we would do it. Mr. Merrifield said he would, it was all right to go ahead.

"Q. Do you know that afterwards Mr. Merrifield did pay for it?

"A. Yes, sir.

"Q. State how you know that?

"A. My recollection is that the bank sent the bill to my bookkeeper and Miss Bailey paid it and Mr. Merrifield gave her a check for it.

"*Q.* In other words you paid it and Mr. Merrifield paid you?

"*A.* Yes, sir."

Unless Merrifield believed that he had title to the land back to the alley, it is inconceivable that he would have paid for this paving.

John Clear, a truckman who had delivered goods to the occupants of the store for many years, was asked:

"I ask you what, if any, occupation, or use has been made of that land by the tenants of that Merrifield property?

"*A.* They have used it all of the time as long as I know anything about it, they have used it, whoever was in there, whoever rented it."

Mr. Loftus was not interrogated as to whether he understood his lease covered this land. It may be noted, however, that the question as to whether the possession of the land by the tenant would inure to the benefit of the landlord unless intended to be included in the lease was apparently not raised on the trial until after the proofs were closed.

From the evidence submitted, we think the jury might have found that the Merrifields believed the land in question was covered by their deed and that they and Loftus understood that the right to occupy it passed to him under his lease. And, if so, the possessory rights acquired by Loftus would inure to the benefit of his landlord.

The trial court was apparently of the same opinion. The following instruction was given:

"I will say to you, members of the jury, that in determining when this adverse possession commenced that an independent adverse occupation by a tenant of the property not purporting to be covered by the terms of the lease and not based upon any authorization purporting to be conferred thereon, by the lessor does not inure to the benefit of the landlord."

The defendants preferred the following request:

"In considering the question of adverse possession for the statutory period of time, I charge you, that if you find that adverse possession, as I have explained to you, has been held continuously by the Merrifields and their tenants for a period of fifteen years or more at any time prior to the commencement of this suit, then you should find for the defendants in this case. And in considering whether defendants have held the property in question, openly, adversely, notoriously and hostile, you should consider the general recognition by the public of such holdings, that is, consider the fact, if you find it to be a fact, that Merrifield has paid for the paving on the back of this property and in the alley, and that Merrifield's permission was sought by the tenants of the plaintiffs to build a fire-escape over all of the property in question, and that Merrifield's permission was sought and recognition given to Merrifield's rights, in the use of this land for alley purposes.    In other words, you may consider any recognition of ownership and control accorded Merrifield in connection with the use and occupancy of the land in question as indicating Merrifield's claim of right to occupy, own, control, etc., to the exclusion of all others."

An assignment of error was based on the refusal to give this request.    While the charge as given correctly stated the law by which the jury should be governed, we feel constrained to hold that this request should have been given.    The legal question presented was a little difficult for the lay mind to comprehend.    The facts which they might consider in determining the question of fact to which the law applied was fairly stated in the request, and the attention of the jury should have been called to them.

For this reason the judgment will be reversed and a new trial ordered.    The costs taxable in this court shall abide the result thereof.

McDONALD, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred with SHARPE, J.