# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM P. FROLING REVOCABLE LIVING
TRUST, by its Trustee, WILLIAM P. FROLING,

        Plaintiff/Counter-
        Defendant/Appellee/Cross-
        Appellant,

v

PELICAN PROPERTY, L.L.C.,

        Defendant/Counter-
        Plaintiff/Appellant/Cross-Appellee.

UNPUBLISHED
March 1, 2016

No. 322019
Macomb Circuit Court
LC No. 2013-003083-CZ

---

WILLIAM P. FROLING REVOCABLE LIVING
TRUST, by its Trustee, WILLIAM P. FROLING,

        Plaintiff/Counter-
        Defendant/Appellant,

v

PELICAN PROPERTY, L.L.C.,

        Defendant/Counter-
        Plaintiff/Appellee,

and

CAREN BURDI and EARL, EARL & ROSE,
P.L.L.C.,

        Appellees.

No. 323074
Macomb Circuit Court
LC No. 2013-003083-CZ

---

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

-1-

In Docket No. 322019, defendant Pelican Property, L.L.C. (hereafter "defendant"), appeals as of right the May 13, 2014 opinion and order issued by the trial court granting in part plaintiff's, William P. Froling, as the trustee of the William P. Froling Revocable Living Trust (hereafter "plaintiff"), motion for summary disposition and thereby recognizing a prescriptive easement in favor of plaintiff over a portion of an adjacent parking lot owned by defendant. Plaintiff has filed a cross-appeal from that same order, challenging the trial court's limitation on the scope of the prescriptive easement. In Docket No. 323074, plaintiff appeals as of right the trial court's August 4, 2014 order denying his request for an award of attorney fees and costs against defendant, Caren Burdi, and Earl, Earl & Rose, P.L.L.C., as a sanction for asserting frivolous defenses.[1] In Docket No. 322019 we reverse the trial court's grant of summary disposition in favor of plaintiff and remand for proceedings not inconsistent with this opinion and in Docket No. 323074 we find the issues presented moot and decline to address them.

FACTS

This case involves plaintiff's action for declaratory and injunctive relief regarding whether commercial property owned by the Froling Revocable Living Trust (FRL Trust), and upon which a restaurant operates, has a prescriptive easement to use an adjacent parking lot owned by defendant in the city of Warren. The FRL Trust, through its trustee (plaintiff), claims ownership of property located on 12 Mile Road that it leases for restaurant use (hereafter "Lot 1"). Since 2005, Roza Gjonoviq has been operating Dino's Cozy Cabin restaurant on Lot 1. A bowling alley with a parking lot is located immediately to the west of Lot 1 (hereafter "Lot 2"). Defendant has ownership of Lot 2 through an April 2010 purchase by Jim Matti.

Plaintiff claimed that the FRL Trust originally owned both lots. It is undisputed that an easement document, with an apparent 1987 date stamp, contains a reservation by the "grantor" of an irrevocable, nonexclusive easement for the "[r]ight of ingress egress and cross-movement though, over and across the easterly 50' of Parcel 1 [Lot 2]." Plaintiff claims that as long as a restaurant has been on Lot 1, customers have also used Lot 2 for parking. In 2010, however, defendant began erecting "no parking" signs and having restaurant customer cars towed from Lot 2 parking spaces.

Plaintiff filed his complaint on August 1, 2013, seeking to have the trial court declare a prescriptive easement regarding the parking lot. Defendant filed a counterclaim with respect to Lot 2, asserting that Lot 1's parking was encroaching on Lot 2 by approximately two feet and sought a declaratory judgment that plaintiff has no interest whatsoever in Lot 2. On the parties' counter-motions for summary disposition, the trial court partially ruled in plaintiff's favor on its claim with respect to Lot 2, determining that a prescriptive easement exists, but only to the extent that Lot 1's parking spaces are all being occupied by the restaurant's owners, employees, and

---

[1] The August 4, 2014 order also granted plaintiff's motion to stay the final judgment and to continue a preliminary injunction.

customers. The trial court also ruled that plaintiff may claim title to the two-foot strip of land along the border of defendant's parking lot demarcated by cement parking barriers. [2]

The trial court denied plaintiff's motion for reconsideration. Thereafter, plaintiff moved for sanctions against defendant, its counsel, and counsel's law firm for advancing allegedly frivolous and abusive defenses and employing frivolous and abusive litigation tactics. The trial court denied plaintiff's motion for sanctions and these appeals followed.

<u>Docket No. 322019</u>

Defendant first contends that the trial court erred in partially granting plaintiff's motion for summary disposition with respect to plaintiff's claim for a prescriptive easement on the parking lot owned by defendant. Defendant advances several reasons for this argument, the first being that adverse use of Lot 2 by the FRL Trust's *tenants*, even if for the requisite time period, does not equate with adverse use by and thus a prescriptive easement to *plaintiff*. In essence, defendant argues that the trial court incorrectly applied the relevant law. On this first basis advanced by defendant, we find that summary disposition was inappropriate in plaintiff's favor.

An appellate court reviews a trial court's decision on a motion for summary disposition de novo. *Bonner v City of Brighton*, 495 Mich 209, 220; 848 NW2d 380 (2014). A motion for summary disposition under MCR 2.116(C)(10) tests "the factual sufficiency of the complaint, with the trial court considering the entire record in a light most favorable to the nonmoving party." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). Summary disposition is proper where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "[A] genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The moving party has the initial burden of supporting its position with affidavits, depositions, admissions, or other documentary evidence. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). The burden then shifts to the nonmoving party to offer evidence demonstrating a genuine issue of material fact. *Id.* The evidence is considered only to the extent that the content or substance would be admissible as evidence. *Id.*; MCR 2.116(G)(6). A trial court may not assess credibility or determine facts when deciding the motion. *Lima Twp v Bateson*, 302 Mich App 483, 492; 838 NW2d 898 (2013).

A trial court's holdings in equitable actions are also reviewed de novo. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). An action for a prescriptive easement

---

[2] Defendant also made a claim with respect to a third lot, and defendant's motion for summary disposition was granted with respect to the third lot, but resolution of that claim is not challenged on appeal.

is equitable in nature. *Id*. at 698. The party claiming a prescriptive easement has the burden of establishing entitlement to the prescriptive easement by clear and cogent evidence. *Matthews v Dep't of Nat'l Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). Under this standard, the burden is not met where there is any reasonable doubt regarding the elements of the claim. See *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988).

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000); see also MCL 600.5801(4) (period of limitations is generally 15 years for an action for the recovery or possession of lands). Continuous use does not require constant use, but rather is evaluated in light of the nature and character of the right claimed. See *Dyer v Thurston*, 32 Mich App 341, 344; 188 NW2d 633 (1971)(seasonal use of pathway constituted continuous use). "Use of another's property qualifies as adverse when made under a claim of right when no right exists." *Plymouth Canton Community Crier, Inc*, 242 Mich App at 681.[3] With respect to the requirements that the use be open and notorious, it must be apparent to the property owner that rights are being invaded in an adverse manner. *Whitehall Leather Co v Capek*, 4 Mich App 52, 55; 143 NW2d 779 (1966).

As preliminary issues, we first note that the trial court found a prescriptive easement "only to the extent that Lot 1's parking spaces are all being occupied by the restaurant's owners, employees, and presently-dining customers." Despite the fact that no single restaurant tenant occupied the restaurant for 15 years, it found no need to "tack" the rental periods of the various restaurant tenants together to meet the requisite 15-year period because plaintiff had owned Lot 1 and its improvements since the 1980's. However, the trial court did not decide whether the FRL Trust had a prescriptive easement *independent* of the restaurant business, notwithstanding plaintiff's claim in the motion for summary disposition that he and his alleged employees also used the parking lot in Lot 2. Because the trial court did not decide this issue, plaintiff's argument regarding his own alleged use of Lot 2 to claim a prescriptive easement is not preserved for appeal. *Fast Air, Inc*, 235 Mich App at 549. And, because plaintiff's cross-appeal does not specifically seek a prescriptive easement for uses independent of the restaurant business, he has abandoned any such claim. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

We also note that defendant has failed to raise any issue concerning plaintiff's claim that Lot 1 and Lot 2 were both owned by the FRL Trust until 1987, when Lot 2 was sold with a reservation of an ingress and egress easement over Lot 2, as set forth in the easement document recorded in the Macomb County Register of Deeds at Liber 4140, page 421. As pointed out in the trial court's opinion, a property owner may not acquire prescriptive rights in its own lands. See *Von Meding v Strahl*, 319 Mich 598, 606; 30 NW2d 363 (1948). Therefore, the 26-year period between 1987, which was when the FRL Trust's ownership of Lot 2 ended, and August 2013, which was when plaintiff filed this action, is the appropriate time period for evaluating

---

[3] The adversity element has also been referred to by courts as hostility. *Plymouth Canton Community Crier, Inc*, 242 Mich App at 681.

plaintiff's claim for a prescriptive easement. Thus, the latest date for commencing the 15-year statutory period would be August 1998.

As previously indicated, because the claim (and the trial court's finding) to the prescriptive easement in this matter is based entirely on the FRL Trust's tenants' alleged open, notorious, adverse, and continuous use of the parking lot for a period of fifteen years (*Plymouth Canton Community Crier, Inc*, 242 Mich App at 679), we must first decide whether the FRL Trust, as a landlord, may claim an easement based upon its tenants' use. Defendant answers that question in the negative, relying on *Capps v Merrifield*, 227 Mich 194; 198 NW 918 (1924) to argue that because such use was not recognized in the tenants' leases and was not authorized when the leases were executed, the alleged adverse use of Lot 2's parking lot by tenants of Lot 1 cannot inure to plaintiff's benefit.

In *Capps*, one of the defendants owned land on which a store building fronted a street in the city of Lansing. *Id*. at 195. The other defendant was a tenant in the store building for 22 years. *Id*. The plaintiff was the record title owner of adjacent property. *Id*. The defendant-tenant, like predecessor tenants, used the plaintiff's property for store business, which included storage and improvements. *Id*. The defendant-property owner claimed title to that property based on the possession of its tenants on the ground that the possession inured to its benefit. *Id*. at 195-196.

The majority in *Capp*, 227 Mich at 201, determined that the lease did not expressly cover the disputed land, but that there was sufficient evidence for the trier of fact to draw an inference that the defendant-property owner believed that the disputed land was covered by the deed and that the defendant-tenant understood that the right to occupy it passed to him under the lease. *Capps*, 227 Mich at 198-201. Accordingly, the possessory rights acquired by the defendant-tenant would inure to the defendant-property owner, as the landlord, because it was intended to be included in the lease. *Id*. at 201. The case was remanded for a new trial because the trial court failed to grant the defendants' request for a jury instruction that would have assisted the jury in determining whether the defendant-property owner adversely possessed the property for the necessary period of time and "[t]he legal question presented was a little difficult for the lay mind to comprehend." *Id*. at 202.

Contrary to defendant's argument on appeal, the majority in *Capps*, 227 Mich at 201, did not hold that the landlord must either include the use of the disputed property in a lease or orally authorize its use as part of the lease for the tenant's possession to inure to the landlord's benefit. Rather, the majority found it sufficient that *an inference* could be drawn that the use was intended to be part of the lease. *Id*. at 199-201.

Later, in *Gay v Wilson*, 327 Mich 265; 41 NW2d 500 (1950), our Supreme Court considered both a landlord's use of property and a tenant's use to uphold a trial court's finding of a prescriptive easement over a parcel identified as 6a, which was frequented as a rear entrance by each occupant of another parcel identified as 7c for at least 21 years. A bank had ownership of parcel 7c in the 1920s. *Id*. at 268. The bank had several tenants, including defendant Ralph Wilson, who ultimately acquired title of parcels 7a, 7b, and 7c through the bank receiver's quitclaim deed in 1940. *Id*. at 268. The Supreme Court determined that Wilson's use of parcel 6a from 1940 to 1947 could be tacked onto the use by the bank and its tenants from 1926 to 1940

because the "proofs show a common understanding as to user over many years by all persons connected with the parcels" and a sufficient oral transfer of the right was made when Wilson was informed by the bank receiver at the time of the conveyance to him that the bank had the right of ingress and egress over parcel 6a. *Id.* at 270. The Court also determined:

> The record further contains ample evidence that the owners of parcel 6a are chargeable with knowledge and acquiescence in the user. A considerable portion of the 6a passageway is closed in by buildings and the overhead porch. The only entrance to the passageway is by a door in the overhead structure. Neither this door nor the one into 7c has ever been blocked, and no objections have ever been made to the user of the passageway. The circumstances are not comparable to passage over unenclosed lands.

> That user by the bank's tenants was user by the bank, is supported by the evidence. A tenant's user inures to the landlord if the landlord has conferred upon the tenant any authorization of such use. *Capps v Merrifield,* 227 Mich 194. The doorway from the building on 7c opens directly into the 6a passageway. The employees of the bank and its receiver used this door in the intervals between tenant occupancies. When the bank building was appraised in 1933 and again in 1940 the receiver claimed an easement over 6a. In 1924 the use of 6a was contemplated by the bank when it signed the agreement to share with adjacent property owners the expenses in connection with the alley located in parcel 6e. The testimony clearly shows that the bank asserted rights of user, and in leasing the premises, authorized such use by its tenants. [*Gay,* 327 Mich at 270-271.]

In this case, there is no evidence of any express or oral grant by plaintiff to its tenants of authority to use Lot 2's parking lot. In addition, plaintiff did not offer evidence in support of its motion under MCR 2.116(C)(10) from which it could be inferred that plaintiff believed that Lot 2 could be used for parking under terms of any deed or that each tenant, commencing with the relevant time period in 1987, understood that the right to use Lot 2 for parking passed to it under terms of the lease. Plaintiff was uniquely positioned to address any deed terms because the only express easement over Lot 2 was created through a reservation of easement rights (concerning ingress and egress) when Lot 2 was sold in 1987.

In addition, as stated in *Siegel v Renkiewicz Estate,* 373 Mich 421, 425; 129 NW2d 876 (1964):

> [I]t has long been the rule in Michigan that the statutory period of possession or user necessary for obtaining title by adverse possession or easement by prescription is not fulfilled by tacking successive periods of possession or user enjoyed by different persons in the absence of privity between those persons established by inclusion by reference to the claimed property in the instruments of conveyance or by parol references at time of the conveyances.

Where, however, "the tacking property owners are 'well acquainted' and there is clear and cogent evidence that the predecessors-in-interest 'undoubtedly' intended to transfer their rights

to their successors-in-interest" the parol transfer requirements may be satisfied without any parol statement. *Matthews*, 288 Mich App at 41-42.

Although plaintiff argues that there was a long pattern of use of the parking in Lot 2, there was no evidence of a change in the property *ownership* for the requisite 15-year period. The FRL Trust always owned the property. In addition, there was no transaction between the first tenant during the relevant time period, America's Coney Island (who executed a ten-year lease), and the successor restaurant that was operated under different names or the successor tenants. The evidence, when viewed in a light most favorable to defendant, indicates that there were two basic leases executed between 1987 and 2013, neither of which were in effect for a 15-year period.[4] Each tenant executed lease documents with the FRL Trust as the landlord.[5] And, again, unlike in *Capps*, 227 Mich at 198-201, there is no indication that any of the tenants understood that the right to use Lot 2 passed to them under their respective leases. *Capps*, 227 Mich at 198-201.

Finally, plaintiff provided no evidence regarding whether tenant customers parked in Lot 2 at the direction of the tenant. Roza Gjonoviq provided an affidavit wherein she averred that she has owned and operated Dino's Cozy Cabin restaurant on Lot 1 since 2005 and that she was employed at the prior restaurant between 1997 and 2005. Gjonoviq swore that restaurant employees, family members, and restaurant customers had parked on Lot 2 since she began working at this location. Plaintiff provided additional affidavits of customers of the restaurant located on the property who stated that they frequented the restaurant regularly since around 1995, that they, restaurant employees, and restaurant customers regularly parked in the adjacent bowling alley's parking lot. Thus, while tenant customers may have parked in Lot 2, there is no indication that they did so because the FRL Trust or its tenants told them to do so. This is in contrast to *Gay*, 327 Mich at 270, where the defendant was specifically informed by the bank receiver at the time of the conveyance of a parcel of land to him that the bank had the right of ingress and egress over another parcel.

In sum, plaintiff did not provide evidence demonstrating that there was no genuine issue of material fact regarding whether the tenant use of Lot 2 for parking inured to plaintiff's benefit over a 15-year period occurring sometime between 1987 and August 2013. Plaintiff provided no evidence from which it could be inferred that plaintiff believed that Lot 2 could be used for parking under terms of any deed, plaintiff did not establish that an inference could be drawn that the use was intended to be part of the lease(s) (*Capps*, 227 Mich at 199-201) and, there is no

---

[4]Lease documents show a ten-year lease between FRL Trust and America's Coney Island executed in 1990 and an assignment of that lease to the Vicari's and Buscemi's in 1994. Upon the Vicaris' and Buscemis' entry into a stock purchase agreement with Michael Spear in 2000, the FRL Trust entered into a new lease agreement with Michael and Kenneth Spear in 2000. Addendums to extend this lease were made in 2005, 2010, 2011, 2012, and 2013.

[5] Until August 2005, when, for reasons unclear from the record, Hatherly Commons, Inc., was named as the landlord in lease documents.

evidence of any express or oral grant by plaintiff to its tenants of authority to use Lot 2's parking lot (*Gay*, 327 Mich at 270-271). Therefore, plaintiff (indeed neither party, as will be further discussed below) was not entitled to summary disposition under MCR 2.116(C)(10). The trial court's contrary decision to grant summary disposition in favor of plaintiff was based on an error of law because it failed to consider that the restaurant use of Lot 2 must inure to plaintiff's benefit.

This leaves plaintiff's unpreserved argument that he does not need the tenants' use to establish a prescriptive easement to use Lot 2 as a parking lot. Plaintiff's claim of an easement premised on use not related to his tenants is based on William J. Froling's affidavit and the numerous documents regarding restaurant operations between 2004 and 2007. In his affidavit, Froling averred that "[m]y father, his employees including myself, tenants and restaurant customers have continuously parked, *without permission*, in the bowling center's parking lot for over 25 years." Froling additionally swore that his employment involved "property management duties related to said restaurant building and property." However, there is no factual development regarding Froling's specific duties that would require him to visit Lot 1 or the character of the "continuously parked" use over Lot 2 by Froling, plaintiff, or employees that Froling claimed occurred. Also, considering the evidence that Froling functioned through the Titan Construction & Mgt. Co., Inc. and that the documents regarding business operations for the period of 2004 to 2007 included invoices billed to Titan Construction & Mgt., factual development appears necessary to determine the nature of the employment relationship and any understanding with plaintiff regarding where parking should take place for contractors or employees to perform their duties over the necessary 15-year period.

"[A]ffidavits must be made on the basis of personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds in the motion." *SSC Assoc Ltd Partnership v Gen Retirement Sys*, 192 Mich App 360, 364; 480 NW2d 275 (1991); see also MCR 2.119(B)(1). Conclusory averments are inadequate. *Id.* It is also well settled that, where the truth of a material assertion of a movant's affidavit depends on the affiant's credibility, there exists a genuine issue of material fact. *Id.* at 365. Therefore, Froling's affidavit is insufficient to establish that there is no genuine issue of material fact regarding plaintiff's ability to prove a prescriptive easement separate from tenant use. The various documents from 2004 to 2007 are also insufficient. Accordingly, plaintiff's unpreserved claim does not provide any basis for appellate relief.

Moreover, the scope of a prescriptive easement is generally limited by the manner in which the easement was acquired and the previous enjoyment. *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 271; 739 NW2d 373 (2007). "One who holds a prescriptive easement is allowed to do such acts as are necessary to make effective the enjoyment of the easement unless the burden on the servient estate is unreasonably increased; the scope of the privilege is determined largely by what is reasonable under the circumstances." *Id.*

Therefore, to the extent that plaintiff purports to claim a prescriptive easement that is *not* predicated on tenant use, it would be unreasonable to conclude that he *also* could burden Lot 2 with tenant use if he establishes this claim. Accordingly, while this Court may affirm a trial court's summary disposition ruling when it reaches the right result for a wrong reason, *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000), plaintiff's claim in this regard would

require this Court to grant a different disposition—that plaintiff is entitled to a prescriptive easement for *his own* use based upon *his* prior use of Lot 2.

Defendant also challenges the trial court's grant of a prescriptive easement in plaintiff's favor based upon the trial court's application of presumptive principles in *Dyer v Thurston*, 32 Mich App 341; 188 NW2d 633 (1971). The *Dyer* Court stated that a "conclusive presumption arises that the right originated in a grant when the use has continued for many years . . . and no proof of whether the claimed prescriptive easement originated in written grant or oral permission is available." *Id*. at 343. However, the circumstances in *Dyer* involved the use of one property owner of a pathway over an adjoining property owner's property to access a lake. *Dyer,* 32 Mich App at 342-243. It was predicated on conclusive-presumption principles applicable to nonpublic roadways, which, as set forth in *Berkey & Gay Furniture* Co, 194 Mich at 242, provide:

> It has been held that the open, notorious, continuous, and adverse use across the land of another from a residence or place of business to a public road for more than 20 years affords a conclusive presumption of a written grant of such way (*Clement v Bettle*, 65 NJ Law, 675 [48 Atl 567]), and that when the passway has been used for something like a half century, it is unnecessary to show by positive testimony that the use was claimed as a matter of right, but that after such user the burden is on the plaintiff to show that the use was only permissive (*Magruder v Potter*, 77 SW 919, 25 Ky Law Rep 1336). See, also, *Chenault v Gravitt*, 27 Ky Law Rep. 403 (85 SW 184); *Wathen v Howard*, 27 Ky Law Rep 7 (84 SW 303).

This case differs from *Dyer* because there exists an express easement for ingress and egress over Lot 2 to access Lot 1, and the claimed prescriptive easement involves an area open to the public. In addition, the law governing civil presumptions has changed. It is currently governed by MRE 301.[6] See *Widmayer* v Leonard, 422 Mich 280, 287-288; 373 NW2d 538 (1985). Its function is only to place the burden of producing evidence on the opposing party. *Id*. at 289. To the extent that the trial court relied upon *Dyer*, then, that reliance was, in fact, incorrect.

Defendant further contends that use of Lot 2 by plaintiff's tenants was permissive, rather than hostile, such that a prescriptive easement could not be found in any event. Defendant attempts to create a presumption of permission based on the unenclosed nature of the parking lot, its accessibility to the general public, and its alleged mutual and reciprocal use by various businesses.

The majority of the cases cited by defendant in support of its position that use was permissive are misplaced. *Barley v Fisher*, 267 Mich 450; 255 NW 223 (1934), for example,

---

[6] MRE 301 provides that "[i]n all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

concerns adverse possession which, unlike a claim for a prescriptive easement, requires exclusivity. *Plymouth Canton Community Crier, Inc*, 242 Mich App at 680. Thus, *Barley* is not relevant to the instant matter. *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 647; 528 NW2d 221 (1995), is also irrelevant, as it concerns the issue of prescriptive easements for activities involving hunting and fishing with respect to lands registered under the former Commercial Forest Act MCL 320.201 *et seq*.[7] *Whitehall Leather Co*, 4 Mich App 52, did not apply a presumptive approach to evaluate the issue of adversity. Thus, it provides no support for defendant's claim on appeal that permission may be presumed. *Du Mez v Dykstra*, 257 Mich 449; 241 NW 182 (1932) concerned "wild and unenclosed lands" and the decision was based, in part, on the Court's observation that the "general custom of owners of wild lands to permit the public to pass over them without hindrance. *Id*. at 451. This case, in contrast, involves commercial property that was improved by the construction of a parking lot. Moreover, the existence of a mutual use does not constitute a presumption of permission. Instead, the proper presumptive approach is controlled by *Widmayer*, 422 Mich 280.

The record is insufficient to establish either a presumption of permission or tacit permission. And as indicated earlier, there is no factual development regarding the relationship between plaintiff and defendant's predecessors-in-interest of Lot 2 to evaluate if there was some mutual use of Lot 1 and Lot 2. It is true that Lot 2 was accessible to the general public through the driveway that the parties shared for ingress and egress. Indeed, a member of the general public could on his or her own volition decide to park in the parking lot and then walk someplace else other than the bowling alley in Lot 2 or the restaurant in Lot 1. However, the fact that enforcing property rights in the parking lots would be difficult is insufficient to entitle defendant to summary disposition or to create a genuine issue of material fact with regard to whether there was some mutual permissive use that would preclude a finding of adversity over a 15-year period.

Because the parking lot in Lot 2 was open to the general public, the trial court erred in granting summary disposition in favor of plaintiff on whether the use of Lot 2 by customers of the restaurant could form the basis of a prescriptive easement. Even if the tenant use of Lot 2 inured to plaintiff's benefit for the necessary 15-year period, because neither party offered evidence regarding whether tenant customers parked in Lot 2 at the direction of the tenant in support of their respective motions, neither party was entitled to summary disposition. *McCoig Materials, LLC*, 295 Mich App at 693. Therefore, while this particular argument was not raised by defendant in the trial court to support its motion for summary disposition or to oppose plaintiff's motion, reversal is warranted to the extent that the trial court declared a prescriptive easement in favor of plaintiff based on the use of Lot 2 by his tenants' customers.

Defendant also argues that the general public's use of Lot 2 implicates the requirement that the use be open and notorious. Defendant argues that plaintiff must show some act beyond

---

[7] The Commercial Forest Act was repealed by 1995 PA 57, effective May 24, 1995. It is now part of Article III of the Natural Resources and Environmental Protection, MCL 324.51101 *et seq*.

what is routinely done by the general public, such as placing signs on Lot 2 or directing tenant customers to park in Lot 2 to show a prescriptive easement. As plaintiff points out on appeal, this issue was not presented by defendant to the trial court. But it goes hand in hand with defendant's argument that a prescriptive easement may not be based on the general public's use of property on its own volition. We will thus address it.

The burden rested with plaintiff to establish the prescriptive easement, *Widmayer*, 422 Mich at 290, and the trial court made a summary disposition ruling to partially recognize a prescriptive easement. Plaintiff had the initial burden of supporting his position that the alleged easement was open and notorious with affidavits, depositions, admissions, or other documentary evidence. See generally *McCoig Materials, LLC*, 295 Mich App at 693. Plaintiff relied on William Froling's affidavit wherein he averred that in 2011, the owner of Lot 2 requested that he pay for repairs to Lot 2 "because Mr. Matti alleged that my tenants, restaurant customers and my employees had historically parked in the entire bowling center lot, causing the required repairs." This statement, if taken as true, could support an inference that Matti informed Froling that he had actual notice that tenants, restaurant customers, and Froling's employees parked in Lot 2. However, the requirement that a use be open and notorious requires that there be no doubt from the use that property rights were being invaded in an adverse manner. *Menter v First Baptist Church of Eaton Rapids*, 159 Mich 21, 25; 123 NW 585 (1909). The affidavit is insufficient to establish that the use was adverse. Also, reasonable minds might diff on whether there was notice that plaintiff was asserting a *claim of right* to use Lot 2 for parking, particularly when one considers that members of the general public (as well as those set forth in Froling's affidavit) could choose to park there on their own volition and that any tenant use must inure to plaintiff's benefit. Therefore, a genuine issue of fact exists and neither party was entitled to summary disposition on this issue.

Defendant also argues that a prescriptive easement may not be established by plaintiff through the misuse or overuse of the written ingress and egress easement. The trial court recognized this argument, but did not specifically rule on it. Thus, while we need not address this issue (see, *Heydon*, 275 Mich App at 278), were we to address it, we would reject this argument wholesale because plaintiff was not attempting to enforce the written easement, but rather to establish a prescriptive easement.

Due to our holding that the trial court erred in granting summary disposition in plaintiff's favor, we need not consider defendant's remaining arguments on appeal. We also need not consider Plaintiff's cross-appeal concerning the scope of the easement.

Docket No. 323074

Plaintiff contends that the trial court erred in denying its post-judgment motion for costs, sanctions, and attorney fees. An appellate court reviews a trial court's finding regarding whether an action or defense was frivolous for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). Whether a document has been signed in violation of MCR 2.114 is also reviewed for clear error. *Contel Sys Corp v Gores,* 183 Mich App 706, 711; 455 NW2d 398 (1990). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen*, 465 Mich at 661-662. Issues involving the proper interpretation and application of a

statute or a court rule are reviewed de novo. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Plaintiff moved for sanctions under MCR 2.114(D) and (E), MCR 2.625(A)(2), and MCL 600.2591. Because of our determination that the trial court erred in granting summary disposition in favor of plaintiff in Docket No. 322019, the issue with respect to plaintiff's request for statutory sanctions is moot. This Court generally does not address moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). MCL 600.2591 applies to costs and fees to a prevailing party and where this Court's reversal of a trial court's grant of summary disposition in favor of a party results in the party no longer qualifying as a prevailing party, the party is not entitled to sanctions. *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 534; 773 NW2d 57 (2009).

Similarly, plaintiff's request for sanctions under MCR 2.625(A)(2) based on his claim that defendant asserted frivolous defenses to his claim for a prescriptive easement over Lot 1 is also moot. That court rule provides that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591."

With respect to costs and sanctions sought under MCR 2.114, this Court is unable to conclude from the record that the trial court considered and decided whether any document was signed in violation of MCR 2.114(D) so as to warrant sanctions under MCR 2.114(E). Therefore, plaintiff's argument predicated on MCR 2.114(D) and (E) is considered unpreserved. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). While this Court has discretion to consider any issue that, in this Court's opinion, justice requires be considered and resolved, *LME v ARS*, 261 Mich App 273, 287; 680 NW2d 902 (2004), this is not one of those issues.

In Docket No. 322019, we reverse the trial court's grant of summary disposition in favor of plaintiff and remand for proceedings not inconsistent with this opinion. In Docket No. 323074 we find the issues presented are moot and decline to address them. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra