# STATE OF MICHIGAN

# COURT OF APPEALS

---

RODNEY KASUBOWSKI,

      Plaintiff-Appellant,

v

RONALD MISIAK, EVA B. PICHAN, THOMAS
DEINEK, and JANE P. GARRETT,

      Defendants-Appellees,

and

JOAN MISIAK,

      Defendant.

UNPUBLISHED
February 27, 2018


No.  336274
Presque Isle Circuit Court
LC No.  15-003114-CH

---

Before:  RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

      This appeal concerns an easement two-track road running north from the northern terminus of Bolton Road to the southeast corner of plaintiff Rodney Kasubowski's property and the southwest corner of property owned by defendants Thomas Deinek and Jane Garrett,[1] and over property owned by Eva Pichan and Ronald Misiak.  It is undisputed that Deinek has an express easement to use the two-track, which appears to have existed long before any witness in this matter was even born.  It is also undisputed that the Deinek and Kasubowski properties are landlocked.  Plaintiff appeals by right the trial court's order of judgment following a bench trial and prior grant of partial summary disposition holding, respectively, that plaintiff had not established an easement by prescription to use the two-track and did not have an easement by necessity over the two-track.  We affirm.

      Initially, however, we address an incidental procedural and related evidentiary issue. Defendant Eva Pichan did not personally attend the trial, and defendants' counsel provided a

---

[1] Deinek and Garrett are married; for convenience, however, strictly for convenience, we will refer only to Deinek.

-1-

note from her cardiologist, dated nine months previously, to the general effect that her physical presence was medically contraindicated. Eva's youngest son, Lee Pichan, testified that he had a durable power of attorney for Eva, and that he had discussed the lawsuit with her that morning, and "her wishes with regard to this case" were "the same as before." Plaintiff argues that the trial court should have held Eva in default and that the trial court improperly admitted hearsay statements from Eva through Lee. We disagree.

We review for an abuse of discretion a trial court's decision whether to default a party. *Sturak v Ozomaro*, 238 Mich App 549, 569 n 14; 606 NW2d 411 (1999), abrogated on other grounds as stated in *Macomb Co Dep't of Social Services v Westerman*, 250 Mich App 372, 378; 645 NW2d 710 (2002). We review preliminary questions of law de novo. *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526-527; 672 NW2d 181 (2003). "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). The trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are again reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

Regarding plaintiff's contention that Eva should have been held in default, the only authority plaintiff cites, here or in the trial court, is MCR 2.603(B)(1)(d), which states, "If the default is entered for failure to appear for a scheduled trial, notice under this subrule is not required." Plaintiff additionally points out that the trial court sent notices to parties stating that failure to appear may result in dismissal or default. However, both citations must be considered in context of the entirety of the court rule, which clearly explains that the grounds for a default are a failure "to plead or otherwise defend as provided by these rules." MCR 2.603(A)(1). Consequently, "a party must not be defaulted if the party pleads or, as an alternative to filing a responsive pleading, otherwise defends the action." *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 388; 808 NW2d 511 (2011). Furthermore, unless a court rule expressly states otherwise, an "appearance by an attorney for a party is deemed an appearance by the party." MCR 2.117(B)(1). Notwithstanding plaintiff's doubt as to Eva Pichan's mental state, she was represented by counsel who appeared and defended the action.

We note that plaintiff's argument might have held some weight had Eva been subpoenaed to appear as a witness. In that case, her failure to appear without any prior notice, notwithstanding a medical infirmity that had been well-known for months previously, would have given plaintiff a good argument that he was entitled to some kind of sanction. However, as the above authority shows, it would still not be a sufficient basis for the extreme sanction of a default. In any event, nothing in the record suggests that plaintiff ever did subpoena Eva or seek to depose her, even though she was listed on plaintiff's witness lists. Plaintiff's protests of unawareness that any authority permits a party to not show up to trial in person is simply backwards: while it might as a practical matter be a bad idea, the court rules unambiguously permit a party's attorney to appear *in lieu of* the party's physical presence, absent a specific rule stating otherwise or, as noted, something in the nature of a subpoena.

We have reviewed Lee's testimony, and we are unable to discern any hearsay admitted over objection. His testimony concerning his mother largely consisted of his own personal observations and knowledge about her medical conditions and history. He was not permitted to

testify concerning his mother's position and wishes in the matter because either the trial court sustained an objection to hearsay or defense counsel did not pursue the matter; all he stated was that "her wishes [] with regard to this case," whatever they were, had not changed on the morning of the trial. Otherwise, he testified to his own personal observations of the two-track and substantive matters, to which no hearsay objections were made. We find no error in the trial court's refusal to hold Eva Pichan in default or refusal to disallow Lee Pichan's testimony.

Plaintiff testified that he inherited his 40-acre parcel of property from his grandparents, Leo and Elizabeth Modrzynski, by being made a co-owner with them in 1984, when he was 19 years old. At that time, Leo owned a contiguous parcel of property that included plaintiff's parcel at the eastern end, but that also extended west all the way to a north-south public road called Miller Road. Prior to Leo's acquisition of plaintiff's parcel, it was owned by a predecessor in interest to Misiak, at roughly the same time Pichan's predecessor owned her property and the Deinek's property. Thus, the corner at the end of the easement actually bridged only two owners, diagonally. Misiak, whose memory of the easement dated back the furthest of any witness to the 1950's, testified that there had been a "dilapidated" wooden gate to plaintiff's parcel at that time, and he admitted that it was it was "a possibility" that if one were to clear out all the debris on the easement, one "would . . . find a roadbed leading into the Kasubowski property." Nevertheless, in very broad strokes, although plaintiff's witnesses testified that they made use of the easement to reach plaintiff's parcel, there was unanimity that none of the various parties had ever encountered or observed each other on the easement. Additionally, plaintiff testified that most of the time, he and his guests accessed his property by going over what used to be the rest of Leo's property, which was now owned by plaintiff's mother, Betty Schellie, although that route was a difficult one.

"We review the trial court's findings of fact in a bench trial for clear error and conduct a review de novo of the court's conclusions of law." *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). "The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error," but its ultimate "dispositional ruling on equitable matters," such as whether equitable relief is proper under the facts as found, is reviewed de novo. *Blackhawk Development Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005); *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

To obtain an easement by prescription, the claimant must show "use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007) (quotation omitted). Thus, an easement by prescription is, essentially, an easement obtained by the usage equivalent of adverse possession, with similar elements other than the requirement of exclusivity.[2] *Matthews v Nat*

---

[2] Such an easement can also arise if parties attempted to create an express easement and acted consistent therewith but did not comply with all of the requisite formalities. *Mulcahy*, 276 Mich App at 699-700. No such situation is presented here.

*Resources Dep't*, 288 Mich App 23, 37; 792 NW2d 40 (2010). Each of the words used to describe an element is something of a term of art.

Adversity, or hostility, requires no ill will or declarations of intent, but rather only the absence of permission or the infringement upon the property rights of another. *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 681; 619 NW2d 725 (2000). "Use of another's property qualifies as adverse when made under a claim of right when no right exists." *Id*. Generally, using the property of another with permission precludes a finding of adversity. *Banach v Lawera*, 330 Mich 436, 440-441; 47 NW2d 679 (1951). To be "continuous," the use made of the property need not be literally continuous, but rather it must be used as frequently within the requisite period of time as needed and appropriate for "the nature and character of the right claimed." *von Meding v Strahl*, 319 Mich 598, 613-614; 30 NW2d 363 (1948) (quotation omitted). Thus, it would be more accurate to describe the requisite use as *consistent*. Openness and notoriousness have been described as requiring "actual notice" on the part of the true property holder, but such notice is not the same as actual *knowledge*; rather, the claimant must use the property in such a way that the hostile nature of the adverse use would be readily apparent. *Menter v First Baptist Church of Eaton Rapids*, 159 Mich 21, 25; 123 NW 585 (1909). In other words, the use must be discover*able* by the true owner, not necessarily discover*ed*, and not necessarily apparent to "passing stranger[s]." *Whitaker v Erie Shooting Club*, 102 Mich 454, 459; 60 NW 983 (1894); *Burns v Foster*, 348 Mich 8, 15; 81 NW2d 386 (1957).

We find defendant's argument that Leo must surely have had permission to use the easement, despite absolutely no evidence thereof, to constitute a certain amount of boldness in light of their accusation that plaintiff is speculating. The uncontested evidence, which the trial court does not appear to have deemed incredible,[3] nor does it appear to be so our review of the testimony, is that Leo Modrzynski believed he had a right to use the two-track that did not depend on the permission of anyone. Defendants argue that the record does not suggest why Leo believed he was entitled to use the easement, but what evidence there is, his use of terms like "right of way" and "section line road," all indicate entitlement rather than grace. Defendants' argument that they lacked actual knowledge of plaintiff's or Leo's use of the easement does not establish that there was a lack of "actual notice."

Furthermore, the trial court made one clear factual error. It expressed the belief that Leo Modrzynski had quitclaimed the parcel at issue to plaintiff in 1984, thereby cutting off any possibility of continuing adverse use due to his transfer of interest. However, the testimony was clear that Leo made plaintiff a co-owner of the parcel, and in fact the 1984 deed in question reflects this. Leo's interest in the property did not terminate until his death in 1990. The trial court's factual finding that Leo *transferred* title in 1984 is simply wrong.

Finally, we observe that Misiak, the only witness with any degree of clear recollection dating back to the 1950's, and as a defendant who had every motive to testify otherwise,

---

[3] Obviously, if the trial court had suggested that it was dubious of any witness's credibility, this Court would be obligated to defer to the trial court. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881).

admitted, consistent with plaintiff's testimony, that there had been a dilapidated and poorly constructed gate at the corner from the two-track to the Kasubowski property for as long as he could remember. He further tacitly admitted that he could not explain why a gate would be there other than for ingress and egress, and that it was at least "possible" that there was an old roadbed under the two-track. Interestingly, although not dispositively, public plat maps seem to show Bolton Road extending all the way to that corner in 1903 and 1930. The other witnesses who described the location all agreed that there was *something* there, even if only unidentifiable remains. A long line of case law indicates that the use of an alleged easement for a period of fifty or more years generates a presumption of adversity, although our Supreme Court clarified more recently that the presumption does not change the burden of proof. *Widmayer v Leonard*, 422 Mich 280, 289-290; 373 NW2d 538 (1985).

The clear error standard of review is deferential, but not infinitely so. To the extent the trial court found that Leo Modrzynski transferred his interest in the Kasubowski parcel prior to his death in 1990, and to the extent the trial court may have found that Modrzynski used the two-track under anything other than a claim of right, we are "definitely and firmly convinced that the trial court made a mistake." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472; 719 NW2d 19 (2006). The record unambiguously establishes the adversity element, and the trial court's basis for finding the requisite prescriptive period unmet is wrong. However, the trial court nevertheless arrived at the correct result.

Defendants make a significant point of their lack of actual knowledge that Leo made use of the two-track. As discussed, that is not dispositive *per se*. If it were, it would be impossible ever to obtain a prescriptive easement as against an absentee owner, which is clearly not the law. However, defendants are correct in noting that their lack of actual knowledge has significant bearing on whether Leo was ever there at all, or if he was, how often. The trial court's doubt whether Leo (or plaintiff) used the route regularly simply because it was not the route they used most often is not a logical conclusion. There was testimony to the effect that much of the property in the area was used for seasonal hunting, and in the past it had been used for cattle farming or fields. Misiak and Deinek stated that they liked the isolation, and Misiak at least believed that any traffic was too much. It does not appear that infrequent visits, at least after the cattle were gone, would be out of character for the area. It would not be particularly surprising if encounters were rare events. The evidence shows that Leo's use of the two-track was likely infrequent, but at least somewhat consistent.

Nevertheless, Misiak indicated that he was in the area very frequently and had been since the 1950's. His observations of the two-track included electronic monitoring equipment. The fact that Misiak did not observe Leo making use of the two-track, and later did not observe plaintiff doing so, strongly tends to show that whatever use was made was *so* infrequent that it would not rise above "its occasional use for his own convenience." *Menter*, 159 Mich at 24. Additionally, while the trial court did not make any statements about witness credibility, Misiak's testimony was the only testimony in the record from an actual party to the case that appeared, to the limited extent we can gauge such a thing from a transcript, entirely honest and trustworthy to us. Notably, Misiak was the only witness with a long, contiguous history, and he was the only witness who would have been in a good position to make ongoing observations of the two-track.

We further note that plaintiff's own adverse use of the easement could not have commenced prior to 1984, when he became an owner of the property. Consequently, it could not have matured into a prescriptive easement until 1999. Meanwhile, there was considerable testimony that Deinek installed a large steel gate in the summer of 1993 and kept it locked. Plaintiff's witnesses were inconsistent about the nature of the gate. While the trial court did not say so in so many words, it clearly believed the testimony of the witnesses who described the gate and that it was kept locked. This Court defers to the trial court's assessment of witness credibility. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). Consequently, we find no error in the trial court's conclusion that any adverse use plaintiff made of the easement, if any, terminated prior to the running of the requisite fifteen year period.

As noted, the burden of proof is on plaintiff to show each element of "entitlement to a prescriptive easement by clear and cogent evidence." *Matthews*, 288 Mich App at 37. Plaintiff clearly did so as to adversity. Such evidence as there is regarding continuousness for the requisite term of years is at least uncontradicted, and the trial court's reasoning for rejecting plaintiff's proofs as to those elements is fatally flawed. However, while it would be expected that use of the two-track would not be frequent, the evidence here is that it was *so* infrequent that there is no way to conclude that plaintiff satisfied his burden of proof as to openness. The trial court only partially relied on the absence of any observations by witnesses, but to that extent it was correct. The trial court reached the correct ultimate conclusion: plaintiff did not satisfy his burden of proving that he or his predecessor in interest had established an easement by prescription.

Plaintiff also argues that he should have an easement by necessity over the two-track and that the trial court erred in granting summary disposition in defendants' favor on that argument. A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Although the trial court cited both MCR 2.116(C)(8) and MCR 2.116(C)(10), the trial court and the parties clearly argued facts beyond the pleadings. When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120.

The evidence shows that defendant Misiak's predecessor, Joseph Misiak, owned both the present-day Misiak parcel and the present-day Kasubowski parcel at the same time. At that time, the Kasubowski parcel had no legal means of access other than the easement or by traversing the Misiak parcel, presumably along the easement portion of the Misiak parcel. In broad strokes, an easement will be implied from necessity under such circumstances, "[w]here a conveyance deprives the landowner of access to its property . . . unless the parties clearly indicate a contrary intention." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130-131; 737 NW2d 782 (2007). The deed from Joseph Misiak to Leo Modrzynski consists only of a description of the property. Consequently, *all other things being equal*, plaintiff is completely correct in stating that when Joseph Misiak sold the Kasubowski parcel to Modrzynski, the Kasubowski parcel would have been rendered landlocked and thus entitled to an easement by necessity. Furthermore, it is obvious that the only sane location of any such easement would be, at a

-6-

minimum, the Misiak side of the Bolton Road easement at issue here. Critically, however, all other things are *not* equal.

An easement by necessity is not permanent: it ceases to exist when the necessity does. *Waubun Beach Ass'n v Wilson*, 274 Mich 598, 608-609; 265 NW 474 (1936). Defendants accurately point out that exactly "how necessary" an easement must be to be "necessary enough" is open to some debate. Some case law has relied on a "reasonably necessary" standard, although reasonableness still mandated far more than mere inconvenience or expense, and was based on the presumed intent of the parties. *Chapdelaine*, 247 Mich App at 173; *Schmidt v Eger*, 94 Mich App 728, 732-735; 289 NW2d 851 (1980). Other case law has held that strict necessity is the proper standard, further holding that opinions from this Court applying the lesser standard contravened binding precedent from our Supreme Court. *Charles A Murray Trust v Futrell*, 303 Mich App 28, 45-49; 840 NW2d 775 (2013). The latter standard would seem to hold that "necessity" means it is literally impossible to get from a public road to the property without either committing trespass or taking a helicopter. We have not discovered any cases addressing access requiring defiance of the laws of physics rather than the laws of real property, but it is fortunately unnecessary to consider such a hypothetical here.

It is undisputed that when Leo Modrzynski purchased the Kasubowski parcel, the latter became part of a larger parcel of property that did in fact abut a public road. Even if specific access to any particular *portion* of a parcel was legally relevant—which it is not—mere difficulty in gaining that access does not constitute necessity. *Charles A Murray Trust*, 303 Mich App at 55. In effect, plaintiff more-or-less correctly states that an easement by necessity would have been created by Misiak's divestiture of the parcel. Furthermore plaintiff would be correct in asserting that an easement by necessity is not lost by mere nonuse thereof. *Goodman v Brenner*, 219 Mich 55, 60; 188 NW 377 (1922). However, that easement by necessity would have immediately been extinguished by Modrzynski's receipt of the parcel. *Waubun Beach*, 274 Mich at 608-609. Plaintiff provides no argument or authority for the proposition that the extinguishment of an easement by necessity is anything other than permanent. Thus, while an easement by necessity over the two-track did technically exist for an instant, there is no basis for finding that it can be revived after its necessity ceased.

However, plaintiff unambiguously *does* have an easement by necessity over the property now owned by his mother, Betty Schellie. The record is utterly unambiguous that when plaintiff's acquired his present parcel, it was rendered landlocked *by his grandfather*, whose larger parcel, as noted, touches a public road. Because plaintiff's grandfather is his grantor, this is precisely the situation in which "the grantor created a landlocked parcel in its grantee" and it is strictly impossible for plaintiff to get from a public road to his property otherwise. *Schumacher*, 275 Mich App at 130. Because Schellie is not a party to this action, this Court cannot direct that an order to that effect be entered. However, plaintiff is clearly entitled to this easement.

Additionally, although not strictly legally relevant, we believe this outcome actually favors plaintiff. Presuming plaintiff had been found to have gained a prescriptive easement over the two-track, that easement would have been limited to what use he made of it during the prescriptive period: essentially incidental use by himself and his family a few times a year, such that nobody ever even saw them do so. In other words, plaintiff could absolutely not use it as a regular driveway without overburdening it, and while the exact amount of use is somewhat

vague, he could not even switch from making primary use of the routes over the Schellie property to the two-track. Critically, however, even such a *de minimus* access over the two-track would be utterly fatal to any claim of necessity he has to traverse the Schellie property. By his own testimony, the Schellie property has always been his primary access route, which, under the circumstances, he presently has an unassailable right to continue. While it is *possible* that he could obtain an express easement from Schellie or a successor in interest, it is not guaranteed. Thus, for plaintiff to obtain a prescriptive easement to use the Bolton Road two-track may very well leave him with *less* access to his property.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien